COMMONWEALTH vs. IAN M. VALITON.

Berkshire. September 12, 2000. - November 17, 2000.

Present: MARSHALL, C.J., ABRAMS, GREANEY, IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Statute,* Construction. *Delinquent Child. Practice, Criminal,* Sentence. *Motor Vehicle,* Operating under the influence.

A judge's order that a juvenile, charged with operating a motor vehicle while under the influence of intoxicating liquor, be placed on probation and receive counseling and evaluation by an alcohol education and treatment program, constituted an "assignment" to such a program within the meaning of the second-offense provisions of G. L. c. 90, § 24 (1) (a) (1), with the result that the juvenile, now defendant, was properly charged with, and convicted of, a subsequent second offense, with enhanced penalty consequences. [649-653]

This court concluded that the enhanced second-offense penalty provisions of G. L. c. 90, § 24 (1) (a) (1), are applicable to juveniles as well as adults. [653-655]

A disposition of a charge under G. L. c. 90, § 24, as a juvenile offense is a "like offense" for purposes of the enhanced second-offender penalty of G. L. c. 90, § 24 (1) (a) (1). [655-656]

COMPLAINT received and sworn to in the Northern Berkshire Division of the District Court Department on January 25, 1999.

On transfer to the jury session, the case was heard by *James B. McElroy,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*V. Vincent Lee* for the defendant.

*Joseph A. Pieropan,* Assistant District Attorney, for the Commonwealth.

MARSHALL, C.J. The issue in this appeal is whether a defendant previously charged in the Juvenile Court with being delinquent by reason of operating a motor vehicle while under the influence of intoxicating liquor, with a resulting disposition of the suspension of his license; counselling and evaluation at a program providing education, treatment, and rehabilitation; and an order of probation, may later be charged under the second-

offense enhanced penalty provision of G. L. c. 90, § 24 (1) (*a*) (1).[1] We conclude that he may.

1. *Background.* On January 26, 1999, the defendant was arrested and charged with operating a motor vehicle while under the influence of intoxicating liquor, second offense, in violation of G. L. c. 90, § 24. The defendant pleaded guilty to the underlying charge of operating while under the influence, but requested a jury-waived trial on the issue whether the charge constituted a second offense. After a trial, a judge in the District Court convicted the defendant of committing a second offense.

The Juvenile Court docket of the defendant's case, admitted at trial, indicates that, on April 21, 1996, when he was sixteen years old, he was charged with operating a motor vehicle while under the influence of intoxicating liquor. After the defendant admitted to facts sufficient to warrant an adjudication of delinquency on the charge, a Juvenile Court judge suspended the defendant's license for 210 days, and ordered that he be placed on probation and receive "counseling and eval[uation]" at the Berkshire Council on Alcoholism and Addiction (BCAA). On June 5, 1997, at the request of the probation department, the Juvenile Court judge dismissed that case.

In this case the defendant pleaded guilty to the underlying charge of operating while under the influence of intoxicating liquor, and the only issue was whether the charge was a first or second offense. The District Court judge concluded that the prior disposition in the Juvenile Court constituted a previous assignment to an alcohol treatment facility under G. L. c. 90,

---

[1]In pertinent part, G. L. c. 90, § 24 (1) (*a*) (1) provides:

"Whoever, upon any way or in any place to which the public has a right of access, or upon any way or in any place to which members of the public have access as invitees or licensees, operates a motor vehicle while under the influence of intoxicating liquor . . . as defined in section one of chapter ninety-four C . . . shall be punished by a fine of not less than five hundred nor more than five thousand dollars or by imprisonment for not more than two and one-half years, or both such fine and imprisonment . . . .

"If the defendant *has been previously convicted or assigned to an alcohol or controlled substance education, treatment, or rehabilitation program by a court of the commonwealth or any other jurisdiction because of a like violation* within ten years preceding the date of the commission of the offense for which he has been convicted, the defendant shall be punished by a fine of not less than six hundred nor more than ten thousand dollars and by imprisonment for not less than sixty days nor more than two and one-half years . . ." (emphasis added).

§ 24.[2] The judge then found the defendant guilty of operating while under the influence of intoxicating liquor, second offense, and sentenced him to a suspended sentence of sixty days to a house of correction. He further ordered him to complete a fourteen-day treatment program and to pay a number of fines. The defendant appealed, and we transferred the case here on our own motion.

2. *Discussion.* The defendant argues that there is a fundamental conflict between the basic tenet of the Commonwealth's law as it applies to children, that juvenile proceedings are not criminal, and the Commonwealth's claim that an earlier juvenile disposition can serve as the basis for a determination of subsequent-offender status. Relying specifically on G. L. c. 119, § 53,[3] the defendant contends that it would be at odds with the legislative mandate to treat juveniles as children in need of guidance rather than criminals, and then to treat any noncriminal juvenile disposition as a predicate criminal offense for applying repeat-offender, enhanced criminal penalties. A resolution of his claim requires us to determine whether his juvenile probation disposition, with the attendant evaluation at BCAA, constitutes a previous "convict[ion] or assign[ment] to an alcohol or controlled substance education, treatment, or rehabilitation program," and whether that juvenile disposition is a "like violation" for the purposes of G. L. c. 90, § 24.

We resolve in the defendant's favor, of course, any ambiguity in the statutes at issue. *Commonwealth* v. *Connor C., ante* 635, 642 (2000), citing *Charles C.* v. *Commonwealth,* 415 Mass. 58, 70 (1993). We may also clarify "by judicial explanation" any terms used in a criminal statute that lack precision. See *Commonwealth* v. *Arthur,* 420 Mass. 535, 540 (1995), quoting *Commonwealth* v. *Adams,* 389 Mass. 265, 271 (1983). To clarify the meaning of the terms "assigned," "alcohol or controlled

---

[2]At trial the parties stipulated that the defendant was evaluated at BCAA. The parties also stipulated that BCAA is approved by the Department of Public Health as a program providing alcohol or controlled substance education, treatment, or rehabilitation pursuant to G. L. c. 90, § 24.

[3]General Laws c. 119, § 53, states: "Sections fifty-two to sixty-three, inclusive, shall be liberally construed so that the care, custody and discipline of the children brought before the court shall approximate as nearly as possible that which they should receive from their parents, and that, as far as practicable, they shall be treated, not as criminals, but as children in need of aid, encouragement and guidance. Proceedings against children under said sections shall not be deemed criminal proceedings."

substance education, treatment, or rehabilitation program," and "like violation," G. L. c. 90, § 24 (1) (*a*) (1), we adhere to the canon that a statute should be interpreted to give effect to the intent of the Legislature, as ascertained from the ordinary and approved use of language, the reasons for the enactment, any imperfection to be remedied, and the main object to be accomplished. *Commonwealth* v. *Connor C., supra* at 640.

General Laws c. 90, § 24 (1) (*a*) (1), provides that a "convict[ion] *or* assign[ment]" satisfies the predicate requirement for a second-offense violation (emphasis added). Thus a previous "assignment," without more, is sufficient to support a second-offense conviction: no "conviction" is required.[4] The defendant claims that he was not "assigned" to any facility. But according to the ordinary and approved use of the word "assignment," it is clear that the defendant was "assigned" by the Juvenile Court judge to BCAA.[5] He did not attend BCAA voluntarily but was ordered to undergo evaluation and counselling at BCAA by the judge as a condition of the continuance without a finding. Such a disposition by the judge was not possible in the absence of a court-ordered assignment to an alcohol treatment facility.

---

[4]We agree with the defendant that the order of the judge in the Juvenile Court placing him on probation and requiring him to undergo evaluation and counselling at BCAA does not constitute a "conviction." The statute governing children who violate our laws, G. L. c. 119, makes no reference to G. L. c. 90, § 24, nor does that statute address the distinction between juvenile delinquency proceedings and a criminal prosecution for the offense of operating a motor vehicle while under the influence of intoxicating liquor. Cf. *Commonwealth* v. *Connor C., ante* 635, 640-643 (2000). The Legislature has long mandated that children who violate the law should be treated differently from adult offenders. G. L. c. 119, § 53. See *Metcalf* v. *Commonwealth*, 338 Mass. 648, 651 (1959). See also *Commonwealth* v. *Connor C., supra.* The defendant's earlier disposition in the Juvenile Court that resulted in a continuation without a finding of delinquency cannot be viewed as criminal, and does not constitute a "conviction."

[5]The defendant's claim is all but resolved by our holding in *Commonwealth* v. *Murphy*, 389 Mass. 316 (1983). In that case the Commonwealth charged an adult defendant with operating a motor vehicle while under the influence of intoxicating liquor, second offense, G. L. c. 90, § 24, claiming that the defendant's earlier assignment to and completion of an alcohol education program constituted a previous "assignment" that could subject him to the enhanced penalty provision of G. L. c. 90, § 24 (1) (*a*) (1). *Id.* at 317-319. Albeit in the context of a prior adult proceeding, we held that "a person who admitted to sufficient facts so as to warrant a finding of guilty and whose case was continued on his assignment to an alcohol education program" may be convicted of a second offense pursuant to G. L. c. 90, § 24. *Id.* at 321.

G. L. c. 90, § 24D.[6] Although she did not so specify, it is clear
that the Juvenile Court judge sent the defendant to BCAA in ac-
cordance with the requirements of G. L. c. 90, § 24D. That sec-
tion delineates the disposition available for violators of G. L.
c. 90, § 24 (1) (*a*) (1), who are placed on probation rather than
convicted (adults) or adjudicated delinquent (children). The
imposition of a 210-day loss of license and the order that the
defendant undergo "counseling and eval[uation]" at BCAA
after the defendant's case was continued without a finding,
tracks the requirement of G. L. c. 90, § 24D, that a child under
the age of twenty-one years "placed on probation" shall have
his license suspended for 210 days and "be assigned to a
program . . . for the education and treatment of underage drink-
ing drivers."

The defendant also contends that the condition of his proba-
tion of "counseling and eval[uation]" at BCAA does not qualify
as "an alcohol . . . education, treatment, or rehabilitation *pro-
gram*" within the meaning of G. L. c. 90, § 24 (1) (*a*) (1)
(emphasis added).[7] He suggests that the term "program" gener-
ally refers to a "structured course" of treatment that meets the
minimum content, assessment, staffing, and duration require-
ments specified in the regulations governing licensure of

---

[6]General Laws c. 90, § 24D, provides in pertinent part:

"Any person convicted of or charged with operating a motor vehicle while
under the influence of intoxicating liquor, may if such person consents, be
placed on probation for not more than two years and shall, as a condition of
probation, be assigned to a driver alcohol education program as provided
herein and, if deemed necessary by the court, to an alcohol treatment or
rehabilitation program or to both, and such person's license or right to operate
shall be suspended for a period of no less than forty-five nor more than ninety
days; *provided, however, that if such person was under the age of twenty-one
when the offense was committed, the person's license or right to operate shall
be suspended for two hundred and ten days, and such person shall be as-
signed to a program specifically designed by the department of public health
for the education and treatment of underage drinking drivers.* Such order of
probation shall be in addition to any penalties imposed as provided in [§ 24
(1) (*a*) (1)] and shall be in addition to any requirements imposed as a condi-
tion for any suspension of sentence." (Emphasis added.)

[7]BCAA also clearly meets the expansive definition of "program" under
G. L. c. 90, § 24D, which provides that "[a]lcohol treatment, rehabilitation
program or alcohol treatment and rehabilitation programs utilized under the
provisions of this section shall include any public or private out-patient clinic,
hospital, employer, or union-sponsored program, self-help group, or any other
organization, facility, service or program which the division of alcoholism has
accepted as appropriate for the purposes of this section."

substance abuse outpatient services.[8] An order that a juvenile undergo an evaluation and counselling at BCAA is not akin to an assignment for a first-time adult offender, he claims, because here the Juvenile Court judge did not specify the type of counselling that must be provided or how long it must continue.[9] We reject the argument. BCAA plainly qualifies as a "program" pursuant to G. L. c. 90, § 24: the parties stipulated that BCAA is licensed by the Department of Public Health to provide alcohol education and rehabilitation in accordance with G. L. c. 90, § 24 (1) (*a*) (1) (see note 2, *supra*).[10]

The defendant's argument — that the particular evaluation and counselling services he received at BCAA did not satisfy the "program" requirement of G. L. c. 90, § 24 (1) (*a*) (1) — is unavailing in light of the statute's broad language. Even if the defendant is correct that an assignment for a first-time adult of-

[8]Promulgated in part under the authority of G. L. c. 90, §§ 24 and 24D, 105 Code Mass. Regs. § 162.001 (1996) sets forth "standards for the licensure and operation of substance abuse outpatient services." The regulations establish, inter alia, minimum requirements for staffing, hours of operation, evaluative procedures, and treatment for outpatient alcohol education and treatment programs. See 105 Code Mass. Regs. §§ 162.322-162.406. The defendant cites portions of 105 Code Mass. Regs. §§ 162.000 to support his interpretation of "education, treatment or rehabilitation program." He points out that the regulations mandate that an approved program must include a specific number of hours of operation per week, depending on the type of program, 105 Code Mass. Regs. § 162.400, and must also provide specific treatment content. § 162.406. The defendant also relies on the testimony of his expert at trial that an adult education program generally "entails . . . almost a six month program of going to classes, learning about the effects of alcohol, reading books, getting homework assignments from the program, and . . . remaining abstinent."

[9]The defendant offered evidence tending to show that BCAA may provide little or no counselling to children charged with driving while intoxicated, depending on the results of the initial evaluation. The parties stipulated at trial that the defendant received an evaluation at BCAA and completed his program; they did not stipulate to the type or amount of counselling that he received. See note 2, *supra*. The defendant's expert testified that the assignment to BCAA did not amount to "assignment to a program" because the BCAA assignment was essentially "a tool to determine whether or not [the defendant] would benefit from some counselling after the evaluation," and was not a course of classes or therapy contemplated in the statute and its companion regulations.

[10]The regulations adopted pursuant to the authority of G. L. c. 90, § 24, define a "program" as "a specifically licensed treatment component operating under the authority of the substance abuse outpatient service license." 105 Code Mass. Regs. § 162.020 (1996).

fender is generally more rigorous and of longer duration than the defendant's juvenile evaluation and counselling at BCAA, the repeat-offense provision of G. L. c. 90 does not require any specific adult-type treatment program as a prerequisite for a child to be found in violation of that statutory provision.[11]

We also reject the defendant's related claim that the enhanced second-offense penalty provision of G. L. c. 90, § 24 (1) (*a*) (1), does not apply to children adjudicated delinquent. Two factors persuade us that the Legislature intended those provisions to apply to children, as well as to adults. First, the statute declares in broad language that "[w]hoever" operates a motor vehicle while under the influence of intoxicating liquor will be subject to the range of penalties set forth in G. L. c. 90, § 24 (1) (*a*) (1). The statute does not exempt children from the otherwise inclusive term "[w]hoever." Because the statute does not require a prior criminal conviction as a prerequisite to a second-offense charge, we glean nothing from the use of the term "[w]hoever" itself that suggests it is limited to adults convicted of an earlier offense.

Second, the Legislature recently established provisions in G. L. c. 90 that apply *specifically* to children under the age of eighteen years. See G. L. c. 90, § 24P, as appearing in St. 1998, c. 220, § 7 (effective November 4, 1998). At the time it did so, the Legislature did not modify the enhanced sentencing provisions of G. L. c. 90, § 24 (1) (*a*) (1), to exclude a prior juvenile violation from consideration as a predicate offense. The 1998

---

[11]On this point, the defendant misinterprets the significance of the related regulations, 105 Code Mass. Regs. §§ 162.000. Those regulations provide only the minimum requirements that a provider must meet to be licensed by the Department of Public Health. The minimum treatment standards that apply to all outpatient controlled substance treatment programs are nonspecific and allow for a wide variety of services and educational offerings. They require only that clients receive treatment "with sufficient frequency so as to maintain a continuity . . . appropriate to the needs of the client" and that "[c]ounseling sessions shall focus on the alcohol and other drug abuse and any related personal, family, or job/school problems." 105 Code Mass. Regs. § 162.406 (A), (B) (1996). The regulations do not mandate minimum hours or specific types of counselling for programs that serve children who violate G. L. c. 90, § 24 (1) (*a*) (1), for the first time and who are assigned for evaluation, treatment, or rehabilitation. Several provisions mandate more detailed treatment requirements for specific types of services, including acupuncture, intensive outpatient, day treatment, second offender aftercare, driver alcohol education, and narcotic treatment programs, 105 Code Mass. Regs. § 162.406 (H) (1996), but none governs the type of program to which the defendant was assigned pursuant to G. L. c. 90, § 24D.

legislation does contain specific sentencing provisions for the offense of operating a motor vehicle while under the influence of intoxicating liquor for persons under the age of eighteen years.[12] The 1998 legislation provides minimum penalties for children who offend, while at the same time mandating that a

---

[12]Prior to November 4, 1998, G. L. c. 90, § 24P (1994 ed.), provided specific penalties and dispositions for persons under the age of twenty-one years, who were arrested for, or charged with violating provisions of §§ 24, 24G, or 24L, but did not differentiate between the disposition of persons eighteen to twenty-one years of age from those under eighteen years of age. In St. 1998, c. 220, § 7, the Legislature rewrote § 24P to add the provisions concerning offenders under the age of eighteen years in paragraph (*a*) and added paragraph (*b*) in its entirety. The statute now reads:

"(*a*) *Upon evidence that a person under the age of 21, after having been arrested for or charged with a violation under section 24, 24G or 24L, had a* blood alcohol percentage of two one-hundredths or greater or upon evidence that such person refused to submit to a chemical test or analysis of his breath or blood under section 24, notwithstanding the finding upon any such charge, such person shall have his license or permit to operate a motor vehicle suspended by the registrar for a period of 180 days; *provided, however, that any such person who is less than 18 years of age at the time of such violation shall have his license suspended by the registrar for one year. Such suspension by the registrar shall be imposed in addition to any penalty, license suspension or revocation imposed upon such person by the court as required by said section 24, 24G or 24L.*

"*If a person has not been previously arrested for or charged with a violation under said section 24, 24G or 24L, such person shall, if he consents, be assigned to a program specifically designed by the department of public health for the treatment of underage drinking drivers; provided, however, that such assignment shall not be precluded by a finding or disposition upon a charge against such person under said section 24, 24G or 24L.* Upon entry into such program, as authorized by this section or as otherwise required under any disposition pursuant to section 24D, the suspension of a license or permit to operate as required by this section shall be waived by the registrar for a person under 21 years of age but over 18 years of age; *provided, however, that such suspension shall be for a period of 180 days for such person who was under the age of 18 at the time of such violation.* Upon the failure of a person under the age of 21 to successfully complete such program, the registrar shall forthwith suspend such license or permit to operate for 180 days; *provided, however, that upon such failure to successfully complete such program by a person who was under the age of 18 at the time of such violation, the registrar shall forthwith suspend the license or permit to operate for one year.*

"(*b*) *The license or permit to operate of a person convicted of any violation under section 24, 24G, 24I or 24L who was under the age of 18 at the time of such violation and whose license or permit to operate was not suspended under subsection* (a) *for such violation shall have such license or permit*

person "under the age of 18" be arrested, charged, and subjected to certain penalties pursuant to G. L. c. 90, § 24, in addition to any special juvenile disposition. G. L. c. 90, § 24P. These provisions, as well as the enhanced penalties for offenders "under the age of twenty-one" provided in G. L. c. 90, § 24D, suggest that the Legislature chose carefully which portions of G. L. c. 90, § 24, to apply to all offenders, which to apply only to persons under the age of twenty-one years, and which to apply only to children under the age of eighteen years. Had the Legislature intended that the second-offense enhanced penalty provisions apply only to adults previously "convicted" of the offense, it could readily have included a provision to that effect.

Our interpretation of G. L. c. 90, § 24 (1) (*a*) (1), as it applies to children is also consistent with the Legislature's stated objective of reducing the harms stemming from the operation of motor vehicles by intoxicated drivers, young and old. The emergency preamble to St. 1994, c. 25, § 3, the most recent amendment to G. L. c. 90, § 24 (1) (*a*) (1), provides that the purpose of the act "is, in part, to alleviate a serious public safety problem relative to the operation of motor vehicles while under the influence of alcoholic beverages in the commonwealth," and that its enactment is "necessary for the immediate preservation of the public safety." The provisions governing children who drive while intoxicated, G. L. c. 90, § 24P, and the lengthier license suspension for offenders under the age of twenty-one years, G. L. c. 90, § 24D,[13] are clear evidence of the Legislature's intent to address directly the contributions of children to this challenge to public safety.

We resolve summarily the defendant's final argument that his prior disposition as a juvenile does not meet the "like violation" requirement of G. L. c. 90, § 24. Under the ordinary reading of "like violation," a prior offense is a like violation for the purpose of G. L. c. 90, § 24 (1) (*a*) (1), where the subsequent offense constitutes the same conduct as the earlier. *Commonwealth* v. *Corbett*, 422 Mass. 391, 396 (1996).[14] It is irrelevant that the defendant was subject to different dispositional

---

*suspended for a period of 180 days for a first offense and for a period of one year for a second or subsequent offense.*" (Emphases added.)

[13]See note 6, *supra.*

[14]In *Commonwealth* v. *Corbett*, 422 Mass. 391, 396 (1996), the defendant maintained that he could not be considered a third-time offender under G. L. c. 90, § 24, because his two previous convictions were misdemeanors, and,

options for his juvenile offense; for both his violation as a juvenile and his violation as an adult the Commonwealth was required to prove the same elements to establish a violation of the statute for operating a motor vehicle while under the influence of intoxicating liquor. G. L. c. 90, § 24.

The defendant's conviction pursuant to G. L. c. 90, § 24 (1) (*a*) (1), is affirmed.

*So ordered.*

---

therefore, not "like offense[s]" to the third-offense felony charge. While the *Corbett* case addressed the term "like offense," not the term "like violation" that is at issue here, we adhere to our observation that for the purposes of G. L. c. 90, § 24, "like violation" and "like offense" are interchangeable. *Id.* at 396 n.4.