## COMMONWEALTH vs. WILLIE FURR.

No. 01-P-618.

Suffolk. December 19, 2002. - May 16, 2003.

Present: GREENBERG, KASS, & COHEN, JJ.

*Firearms. Practice, Criminal,* Prior conviction, Sentence, Instructions to jury, Assistance of counsel. *Evidence,* Inflammatory evidence.

Where a criminal defendant was convicted of violating certain firearm control laws, the defendant's prior adjudication as a youthful offender on charges of armed carjacking, kidnapping, armed robbery, and assault and battery with a dangerous weapon constituted a "conviction" that served as a basis for imposing on him the enhanced sentence set forth in G. L. c. 269, § 10G; further, the statute was not vague or retroactively applied. [157-159] GREENBERG, J., dissented.

At the trial of an indictment charging the defendant with attempted intimidation of a witness and attempted obstruction of justice, the judge did not err in admitting in evidence a written statement of the witness concerning the underlying incident for which the defendant was being tried, where the statement was admitted not to prove what happened, but to prove that the witness had said things that would prompt the defendant to threaten him, and the jurors could easily conclude that the witness had made the statement and that this prompted the defendant to threaten him, without concluding that the contents of the statement were true. [159-161]

At the trial of indictments charging that the defendant violated certain firearm control laws after having previously been convicted of a "violent crime" within the meaning of G. L. c. 140, § 121, the defendant's prior adjudication as a youthful offender for armed carjacking, kidnapping, and assault and battery with a dangerous weapon met the criteria for a "violent crime." [161-162]

This court declined to reach a defendant's claim that the judge in his criminal trial did not instruct the jury regarding proof of the defendant's age in order to treat him as a youthful offender, where the defendant did not ask for such an instruction and did not object to its absence at the conclusion of the jury charge. [162]

At a criminal trial, the judge's instruction concerning a ballistics certificate did not reduce the Commonwealth's burden of proof. [162]

At the trial of indictments charging that the defendant violated certain firearm control laws, defense counsel was not ineffective in declining an offer to instruct the jury that the gun in question might be so damaged that it did not meet the statutory definition of a firearm, where the defendant's trial strategy was to suggest that the defendant never possessed the gun, and

counsel could reasonably have concluded that such an instruction would have detracted from the defendant's argument. [162-163]

INDICTMENTS found and returned in the Superior Court Department on December 23, 1999, and June 29, 2000.

On transfer to the Juvenile Court Department, the cases were tried before *R. Marc Kantrowitz,* J.

*Dennis Shedd* for the defendant.

*Kajal K. Chattopadhyay,* Assistant District Attorney, for the Commonwealth.

KASS, J. Section 10G of G. L. c. 269, inserted by St. 1998, c. 180, § 71, imposes enhanced penalties upon any person who violates certain firearm control laws if that person has previously been convicted of a violent crime or of a serious drug offense, both as defined in § 10G(e).[1] The primary question raised by the defendant Willie Furr's appeal is whether his prior adjudication on May 13, 1998, in Juvenile Court, as a youthful offender, on charges of armed carjacking, kidnapping, armed robbery, and assault and battery with a dangerous weapon constitutes a "conviction" that may serve as a basis for imposing on him the enhanced sentences set forth in § 10G. The defendant's position is that only an adult conviction can serve as the predicate offense for purposes of charging a defendant under § 10G. There are subsidiary appellate issues.

On October 6, 2000, the defendant was convicted by a jury in Juvenile Court on youthful offender indictments charging him with unlawful possession of a firearm (G. L. c. 269, § 10[a]); receiving a firearm with an altered serial number (G. L. c. 269, § 11[c]); attempted intimidation of a witness; and obstruction of justice (both under G. L. c. 274, § 6).

---

[1]Violations of the firearms control statute which trigger enhanced sentences under G. L. c. 269, § 10G, are those described in G. L. c. 269, § 10(a), (c) or (h). If the defendant is convicted of one of those violations and has been previously convicted of a violent crime or a serious drug offense, the punishment is imprisonment in State prison for not less than three years nor more than fifteen years; if two previous violent crimes or two serious drug offenses, or one of each, arising from separate instances, the penalty is not less than ten years nor more than fifteen years; if three previous violent crimes or three serious drug offenses or any combination totaling three offenses, arising from separate instances, the penalty is not less than fifteen nor more than twenty years.

1. *Whether a prior adjudication as a youthful offender is a basis for invoking the enhanced penalties provisions of G. L. c. 269, § 10G.* Section 10G(*a*), which is prototypical of the enhanced penalties in the statute, provides:

> "Whoever, having been previously *convicted* of a *violent crime* or of a serious drug offense, as defined herein, violates the provisions of paragraph (*a*), (*c*) or (*h*) of section 10 shall be punished by imprisonment in the state prison for not less than three years nor more than 15 years" (emphases supplied).

Section 10G(*e*) provides in pertinent part:

> "For the purposes of this section, 'violent crime' shall have the meaning set forth in section 121 of chapter 140."

Section 121 of G. L. c. 140 was wholly rewritten by the same act of the Legislature that inserted G. L. c. 269, § 10G, into the General Laws. That statute, St. 1998, c. 180, bears the caption: "An Act Relative to Gun Control in the Commonwealth." General Laws c. 140, § 121, consists almost entirely of definitions. The definition of "violent crime" is:

> "[A]ny crime punishable by imprisonment for a term exceeding one year, *or any act of juvenile delinquency involving the use or possession of a deadly weapon that would be punishable by imprisonment for such term if committed by an adult,* that: (i) has as an element of the use, attempted use or threatened use of physical force or a deadly weapon against the person of another . . ." (emphasis supplied).

The offenses for which the defendant, at age 14, was adjudicated a youthful offender in 1998 (armed carjacking, kidnapping, and assault and battery with a dangerous weapon) contained the elements that satisfy § 121; i.e., they were punishable by imprisonment for a term exceeding one year and involved the use of physical force and the display of a firearm, a deadly weapon. We think the language we have underscored in the preceding quotations from statutes, and the context in which that language appears, communicate unmistakably a

legislative intent that an adjudication of a juvenile as a youthful offender, a form of aggravated juvenile delinquency,[2] be taken as a "conviction" for purposes of G. L. c. 269, § 10G. Were it otherwise, there would be little point in having § 10G refer to the definition of violent crime that appears in G. L. c. 140, § 121, which expressly includes "an act of juvenile delinquency."

In an analogous context, the question arose in *Commonwealth v. Connor C.*, 432 Mass. 635, 635-637 (2000), whether a prior adjudication of delinquency for possession of a firearm under G. L. c. 269, § 10(*a*), constituted a "conviction" for purposes of invoking the repeat offender provision that appears in § 10(*d*). The court concluded that it did. *Id.* at 646. The same considerations which led the court in *Connor C.* to its conclusion pertain here, an intent of the Legislature to increase penalties for children who offend firearms laws and who, by parity of reasoning in the case before us, follow up the commission of serious crimes with an offense against the firearms laws. As the court observed in *Connor C.*, *supra* at 642, "If a prior 'adjudication' does not satisfy the 'conviction' requirement of G. L. c. 269, § 10 (*d*), then the Commonwealth could never indict a child for a second or subsequent firearms offense under G. L. c. 269, § 10 (*d*), because a child is never 'convicted' of violating a statute . . . ."

*Commonwealth v. Valiton*, 432 Mass. 647 (2000), argued and decided on the same dates as *Connor C.*, strikes a similar chord. In the *Valiton* case, the defendant, on April 21, 1996, when he was sixteen years old, admitted to facts sufficient to warrant an adjudication of delinquency on a charge of operating a motor vehicle while under the influence of alcohol. A judge of the Juvenile Court suspended Valiton's license for 210 days and ordered him placed on probation. The judge ordered that during his period of probation Valiton was to receive counseling and

---

[2]"Youthful offender" is a phrase associated with G. L. c. 119, § 54, under which prosecutors have discretion to proceed by indictment against juveniles between the ages of fourteen and seventeen if they are charged with having committed felonies that involve infliction or threat of serious bodily harm or certain violations of gun control law. See *Commonwealth v. Clint C.*, 430 Mass. 219, 222-223 (1999); *Commonwealth v. Connor C.*, 432 Mass. 635, 637-638 (2000).

evaluation at the Berkshire Council on Alcoholism and Addiction. Fourteen months later, on the request of the probation department, the Juvenile Court judge dismissed the case against Valiton. On January 26, 1999, Valiton was again charged with driving under the influence and entered a plea of guilty. The court decided that the component of the probation order to receive counseling was tantamount to Valiton having been assigned to an alcohol education, treatment or rehabilitation program. See *Commonwealth* v. *Valiton*, 432 Mass. at 648-650. He therefore could be charged as a repeat offender under G. L. c. 90, § 24(1)(*a*)(1). Although the court did not regard the probation order as a "conviction" for purposes of triggering the enhanced penalty provision of G. L. c. 90, § 24(1)(*a*)(1), *id.* at 650 n.4, the court rejected the defense contention that the provision did not apply to children adjudicated delinquent. *Id.* at 653.

In the case now before us, we conclude that the Juvenile Court was right to treat the adjudications of the defendant as a youthful offender as predicate offenses for application of the repeat firearm offense charged under G. L. c. 269, § 10G.

On appeal, the defendant also argues that G. L. c. 269, § 10G, is vague and that application of it may not depend on a crime for which the defendant was punished, i.e., the predicate offense, that occurred before § 10G was enacted in 1998. Prescinding from the question whether the defendant waived those points by not raising them in the Juvenile Court, neither has potency. Our discussion, interpretation, and application of § 10G in this case dispose of the claim that it is unfathomable. As to the retroactivity argument, the defendant is not being punished by § 10G for the prior offense; he is being punished now for the subsequent offense, which provides punishment in part on the basis that it is a repeat offense, namely the enhanced sentence. That is not retroactive application of a statute. *Commonwealth* v. *Bruno*, 432 Mass. 489, 497-498 (2000).

2. *Other issues raised by the defendant on appeal.* In connection with the other issues that the defendant has raised, we summarize the pertinent facts. Around 7:45 A.M. on November 3, 1999, Boston police officers parked in an unmarked cruiser in front of Dorchester High School heard gunshots coming from the side of the school building. They drove in the direction of

the noise and saw two boys running. One boy, the defendant, tossed away a firearm and shouted to the other, "Yo, Six, grab the gun." The defendant stumbled and collapsed; he had been shot. One officer tended to the defendant while the other searched for the second boy, later identified as Rahshjeem Benson. When flushed out by the second officer from behind parked cars, Benson said, "There's a burner on the ground right there." That gun, which the officer picked up, looked like the one he had seen the defendant toss away. There were seven rounds in its magazine, and its serial number had been obscured by abrasion and drilling.

Benson gave a written statement about the incident to the police. The defendant learned about the statement and wrote Benson a threatening letter. That letter was the basis of the charge against the defendant of attempted intimidation of a witness and attempted obstruction of justice.

(a) *Admission in evidence of Benson's written statement.* Benson's written statement was admitted in evidence. The defense does not dispute the statement's admissibility in connection with the obstruction and intimidation charges but argues that it was unfairly prejudicial as to the firearm possession charge. Jurors cannot, the defense urges, be expected to consider Benson's statement as to intimidation and obstruction while disregarding it as to the possession charges, despite the judge's instruction that they do so. For support, the defendant relies on *Bruton* v. *United States*, 391 U.S. 123, 125 n.2 (1968), in which jurors were instructed that they might consider a defendant's out-of-court confession — implicating both himself and his jointly-tried codefendant — against the defendant but not against his codefendant. The confessing defendant in the *Bruton* case did not testify and, therefore, was not available for cross-examination. In such circumstances, the Court decided that although jurors generally are presumed to follow instructions, it was too much to ask that they consider a confession with respect to one defendant and then disregard it when considering the evidence against a codefendant. *Id.* at 135-137. If the confessing defendant does not testify, admission of his confession violates the codefendant's right to confront witnesses against him. *Ibid.*

The defendant's reliance on *Bruton* is misplaced. Benson's confession was not hearsay evidence because it was not admitted to prove the truth of the assertions therein. The nonhearsay aspect of Benson's statement — not to prove what happened at the school that day, but to prove that Benson said things which would prompt the defendant to write him a threatening letter — "raises no Confrontation Clause concerns." *Tennessee* v. *Street*, 471 U.S. 409, 413 (1985).[3] If the defendant's counsel doubted that Benson's statement was accurately reproduced, he was free to cross-examine the officer through whose testimony the statement was admitted. See *ibid.* Unlike *Bruton*, in which the jurors were asked to consider evidence from which they might determine that "a confession is true insofar as it admits that A has committed criminal acts with B and at the same time effectively ignore the inevitable conclusion that B has committed those same criminal acts with A," *Bruton, supra* at 131, quoting from *People* v. *Aranda*, 63 Cal. 2d 518, 528-529 (1965), the jurors here easily could conclude that Benson made the statement and that this prompted the defendant to threaten him, without concluding that the contents of the statement are true. We routinely expect jurors to limit their consideration of evidence in various ways, see, e.g., *Commonwealth* v. *Roberts*, 378 Mass. 116, 128 (1979) ("The effective operation of our criminal justice system requires that we trust juries to understand and apply limiting instructions correctly"). The mental gymnastics that set *Bruton* apart from this general expectation do not pertain here.

(b) *Sufficiency of evidence that the crime committed by the defendant in 1996 was a "violent crime."* This point was indirectly disposed of in our discussion of whether the defendant's prior delinquency adjudication as a youthful offender pertained to a violent crime. Carjacking and kidnapping are violent crimes by their nature, particularly when accomplished with the help of a sawed-off rifle. The defendant had displayed a sawed-off rifle. It requires neither discussion

---

[3]As in *Commonwealth* v. *Sinnott*, 399 Mass. 863, 874 n.9 (1987), the defendant suggests that art. 12 of the Massachusetts Declaration of Rights sets a more stringent test for admission of an inculpatory statement by a nontestifying codefendant but, as was the case in *Sinnott*, the defendant neither develops that argument nor cites any authority for it.

nor citation of cases to conclude that this conduct met the criteria for violent crime described in G. L. c. 140, § 121.

(c) *Age, ballistic certificate, and ineffective assistance of counsel.* (i) The defendant objects that the judge did not instruct the jury that if the defendant, a juvenile, were to be treated as a youthful offender, they must find that he was between the ages of fourteen and seventeen at the time of the second offense. Defense counsel at trial did not ask for such an instruction, and did not object to its absence at the conclusion of the jury charge. The point, therefore, is lost on appeal. Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979). Parenthetically, no such instruction is required when the age of the juvenile is not disputed. *Commonwealth* v. *Quincy Q.,* 434 Mass. 859, 866 (2001). The Commonwealth introduced evidence of the defendant's qualifying age to be adjudged a youthful offender, and the defense did not dispute his age.

(ii) The defendant's objection that the instruction to the jury on the ballistics certificate reduced the Commonwealth's burden of proof lacks merit. The judge stated,

> "You are permitted to accept [the ballistics certificate] as sufficient proof that the item is, in fact, a firearm, if there is no evidence to the contrary. You are not required to accept it as proof, but you may. If there is contrary evidence on that issue, you are to treat this certificate like any other piece of evidence and you should weigh it along with all the rest of the evidence on that issue."

Unlike the language in *Commonwealth* v. *Crawford,* 18 Mass. App. Ct. 911, 912 (1984), which "established mandatory presumptions that the gun was a working firearm," the instruction given here permitted, but did not require, the jury to find beyond a reasonable doubt that the item was a firearm. There was no error. See *Commonwealth* v. *Pauley,* 368 Mass. 286, 291-294, 298, appeal dismissed, 423 U.S. 887 (1975).

(iii) In light of testimony by a ballistics expert for the Commonwealth that a spring in the gun's magazine was damaged and that he had to push on it manually for the next round to load before the gun would fire, the judge offered to instruct the jury that a gun might be so damaged that it does not meet the

statutory definition of a firearm, although if it requires only a relatively small adjustment that the defendant is capable of making on the spot, it remains a firearm. Trial counsel declined this offer, and the defendant claims this was ineffective assistance of counsel. The defendant's trial strategy was to suggest that the defendant never possessed the gun and that Benson was trying to exculpate himself by claiming the gun was the defendant's. Trial counsel reasonably could have concluded that arguing "it wasn't mine; and if it was, it wasn't really a gun," would have detracted from the defendant's primary argument. See generally *Commonwealth* v. *Anderson*, 398 Mass. 838, 843-844 (1986); *Commonwealth* v. *McGann*, 20 Mass. App. Ct. 59, 61 (1985); *Commonwealth* v. *Hurley*, 32 Mass. App. Ct. 620, 623 (1992). Such a strategy was not "manifestly unreasonable." See and compare *Commonwealth* v. *Hill*, 432 Mass. 704, 718 (2000).

*Judgments affirmed.*

GREENBERG, J. (dissenting in part). I would reverse the defendant's adjudication as a youthful offender for being an armed career criminal. That statute states, in pertinent part: "Whoever, having been previously *convicted* of a violent crime . . . as defined herein, violates the provisions of paragraph (*a*), (*c*) or (*h*) of section 10 shall be punished by imprisonment in the state prison for not less than three years nor more than 15 years" (emphasis added). G. L. c. 269, § 10G(*a*). Because his prior record consists of juvenile adjudications, rather than adult convictions, the defendant does not meet the statute's requirements. See, e.g., *Department of Youth Servs.* v. *A Juvenile*, 384 Mass. 784, 786 (1981) ("An adjudication concerning a juvenile is not, of course, a conviction of crime").

The majority determines that the statutory language applies equally to adjudications, pointing to the definition of "violent crime" adopted by § 10G, which makes it clear that "violent crimes" can be committed by juveniles. But that definition casts no ambiguity on § 10G's clear requirement that defendants

must have been previously "convicted" of a violent crime. The armed career criminal statute does not authorize punishment for those, such as the defendant, who have been previously adjudicated youthful offenders for committing such an act. If the Legislature had intended for juvenile adjudications to serve equally with adult convictions, it could have done so explicitly, as indeed it did with respect to every other use of the phrase "violent crime" as defined in G. L. c. 140, § 121. See G. L. c. 140, § 129B ("convicted or adjudicated a youthful offender or delinquent child"); G. L. c. 140, § 131 (same); G. L. c. 140, § 131F (same). Guided by the familiar standard of statutory interpretation, I would "decline to read into [G. L. c. 269, § 10G,] something that simply is not there." *Commonwealth* v. *Ruiz,* 426 Mass. 391, 394 (1998).

Next, the majority points to *Commonwealth* v. *Connor C.,* 432 Mass. 635, 646 (2000), in which the Supreme Judicial Court concluded that a " 'previous adjudication of delinquency,' for a violation of G. L. c. 269, § 10 (*a*), (*c*), or (*d*), as that term is used in G. L. c. 119, §§ 52-63, is a 'conviction' as that term is used in G. L. c. 269, § 10 (*d*)." The situation in *Connor C.* was a unique one, however, and the majority neglects to mention that the court was careful to emphasize the narrowness of its holding, limiting it to those specific statutory provisions only. See *ibid.*

In *Connor C.,* the court was faced with determining whether a prior adjudication of delinquency for violation of G. L. c. 269, § 10(*a*), satisfied the requirement of § 10(*d*) that a person previously be "convicted" of a firearm offense. See *id.* at 639. *Connor C.* reaffirmed the "long-standing jurisprudence that an 'adjudication' that a child has violated a law generally is not a 'conviction' of a crime." *Id.* at 646. Nevertheless, the youthful offender statutes, G. L. c. 119, §§ 52, 54, and 58, explicitly reference the potential for a juvenile to violate G. L. c. 269, § 10(*d*), despite § 10(*d*)'s requirement of a "conviction." In order to harmonize § 10(*d*) with the youthful offender statutes, then, it was necessary to interpret the word "conviction," as used in § 10(*d*), to include a juvenile adjudication of § 10(*a*).

The holding of *Connor C.* "is a narrow one, limited to these

specific statutes," *id.* at 646, and I would not, as the majority does, expand it beyond those express limits. Indeed, the majority glosses over the emphasis the Supreme Judicial Court gave to this point by its footnote in *Commonwealth* v. *Valiton*, 432 Mass. 647, 650 n.4 (2000). Released on the same day as *Connor C.*, the footnote in *Valiton* deliberately declines to apply the holding of *Connor C.* to a statute that was not referenced in G. L. c. 119. Because G. L. c. 269, § 10G, also is not specifically referred to in the youthful offender statutes, I would adhere to the general rule that adjudications are not convictions. See *id.*