Fishman, J.
In this action, the plaintiff, Town of Holden (“Holden”), seeks declaratory judgment and injunctive relief regarding the validity and enforcement of an Amendment (“Amendment”) to Section 4 of the Wachusett Regional School District Agreement (“Agreement”) passed in the spring of 2002. The matter is now before the Court on Holden’s motion for summary judgment and the Town of Rutland’s (“Rutland”) cross motion for summary judgment.
BACKGROUND
The following facts are undisputed by the parties. The Towns of Paxton, Princeton, Sterling, Holden, and Rutland are members of the Wachusett Regional School District (“the District”). An Agreement establishing the District was approved by the five member towns, by the Emergency Finance Board, and by the Department of Education in 1951, pursuant to G.L.c. 71, §14B. The Agreement contains a procedure for amendment in Section 14.2. It reads: “Agreement may be amended by recommendation of the Regional School District Committee and approval of the member towns of the District by majority vote at an annual or special town meeting provided that not more than one town disagrees.” The Regional School District Committee (“the Committee”) consists of members elected by each of the five member towns.
Section 4 of the Agreement provides for the method of apportioning costs among the five member towns. It reads: “Payment of all operating costs shall be apportioned among the member towns on the basis of their respective previous five year average total enrollment as of October 1st of each year of the preceding five fiscal years.”
In June 1993 the Legislature, as part of the Education Reform Act, approved major changes to statutes regarding public education. St. 1993 c. 71, §32. General Laws c. 70, §6 was rewritten; it now reads in pertinent part:
Notwithstanding the provisions of any regional school district agreement, each member municipality shall increase its contribution to the regional district each fiscal year by the amount indicated in that district’s share of the municipality’s minimum regional contribution[2] in that fiscal year. The district shall appropriate the sum of the minimum regional contributions of its member districts as well as all state school aid received on behalf of member municipalities. The district may choose to spend additional amounts; such decisions shall be made and such amounts charged to members according to the district’s required agreement.
The Committee and the five member towns have complied with the 1993 amendment.
In 1996, the Legislature amended G.L.c. 71, §16B by inserting the following paragraph:
The members of a regional school district, including a vocational regional school district, may elect to reallocate the sum of their required local contributions to the district in accordance with the regional agreement; provided, however, that the total sum of their required contributions shall not be decreased. Election shall be by approval of all members of the district. Approval of each member shall be given by majority vote at an annual or special town meeting, in the case of towns, or by majority vote of the council, in the case of cities. The commissioner of education shall be notified upon the adoption of this section by the district. Nothing in this section shall be construed to affect the calculation of the members’ required local contributions for any succeeding year as provided by chapter seventy of the General Laws.
St. 1996 c. 551 §220, approved June 30, 1996, and by §690 made effective July 1, 1996. This amendment was part of a major appropriations bill. Paragraph one of G.L.c. 71, §16B, unamended in 1996, still reads: “The regional district school committee . . . shall annually determine the amounts necessary to be raised, . . . and shall apportion the amount so determined among the several municipalities in accordance with the terms of the regional school agreement.”
In March 2002, the Committee voted to amend Section 4 of the Agreement by deleting the section in its entirety and replacing it with a different formula for apportioning costs. The Amendment does not directly affect the minimum regional contribution of each member town but addresses the method of allocating costs in the budget of the District that exceed the aggregate minimum regional contribution of the member towns. It reads in pertinent part:
Section 4.1.2 Each member town shall be assessed an amount to its required Minimum Required Local Contribution (“MRLC”).[3]
Section 4.1.3 If the Regional District proposes that there be a Regional Agreement Spending Assessment (“RASA”)[4] for a particular fiscal year, then the following steps shall be followed in determining each member town’s apportioned share of the RASA for that fiscal year.
Step 1: On a preliminary basis the RASA shall be allocated among the member towns on a per capita basis.[5]
Step 2: The District shall allocate the aggregate of the MRLC required of the member towns among the member towns on a per capita basis.
Step 3: The amounts determined under Step 2 shall be compared with the actual MRLC for each member town and there shall be assigned to any member town whose MRLC (a) exceeds the amount determined under Step 2, a credit equal to that excess, or (b) is less than the amount determined under Step 2, a debit equal to that deficiency (emphasis added).
*114 Step 4: The credits and debits identified in Step 3 shall be applied to each member town’s preliminary RASA as determined under Step 1, with credits being deducted and debits being added to such amounts, subject to the limitation that no refund can be assigned to a member town (zero is the lowest allowable entry under this Step) (emphasis added).
Step 5: Issue Regional Agreement Spending Assessments for operating costs to the member towns on the amounts determined under Step 4.
Section 4.1.4 All costs of the Regional District for any fiscal year not addressed in the prior subsections of this Section 4 shall be apportioned among the member towns on a per capita basis.
Holden, Paxton, Sterling, and Princeton voted to adopt the Amendment. Rutland voted against adoption of the Amendment. On June 10, 2002, the Commissioner of Education (“Commissioner”) stated that he disapproved of the Amendment in a letter to the Chairman of the Committee.
DISCUSSION
This Court must consider Holden’s and Rutland’s motions for summary judgment under the standard set forth in Mass.R.Civ.P. 56(c). Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1973); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Nashua Corp. v. First State Ins. Co., 420 Mass. 196, 202 (1995). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). At a hearing on the motions in this case, the parties agreed that no material facts are in dispute, and therefore, further agreed the case should be resolved by summary judgment as involving a question of law.
At issue for this Court is the validity of the Amendment. Holden claims the Amendment has been duly adopted by four of the five towns in the District, and, therefore, the Amendment is valid pursuant to Section 14.2 of the Agreement and should be implemented. Rutland claims the Amendment is invalid, as it is inconsistent with Massachusetts law and has been disapproved by the Commissioner.[6]
“Statutory interpretation is aquestion of law for the court.” Boston Police Patrolmen’s Association, Inc. v. City of Boston, 435 Mass. 718, 719 (2002), citing Annese Elec. Servs., Inc. v. Newton, 431 Mass. 763, 764 n.2 (2000). “A fundamental tenet of statutory interpretation is that statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result.” Sullivan v. Town of Brookline, 435 Mass. 353, 360 (2001), citing Cohen v. Commissioner of the Div. of Med. Assistance, 423 Mass. 399, 409 (1996), cert. denied sub nom. Kokoska v. Bullen, 519 U.S. 1057 (1997); O’Brien v. Massachusetts Bay Transp. Auth., 405 Mass. 439, 443-44 (1989); Commonwealth v. Vickey, 381 Mass. 762, 767 (1980). Furthermore, “construing a statute in a way that nullifies one of its provisions is inappropriate if there is a reasonable alternative.” Ben Elfman & Sons, Inc. v. Home Indemnity Co., 411 Mass. 13, 18 (1991), citing Saccone v. State Ethics Comm’n., 395 Mass. 326, 332 (1985).
With these basic rules of statutory interpretation in mind, the Court will now review G.L.c. 70, §6 and G.L.c. 71, §16B. Chapter 70, §6 was completely rewritten in 1993 as part of the Education Reform Act. It states that, “notwithstanding the provisions of any regional school district agreement,” each member town is to appropriate the “minimum regional contribution” as determined by the Commissioner towards the funding of the region, and additional amounts designated by the member towns for the funding of the region may be apportioned among the member towns according to the regional agreement. By using the words, “notwithstanding the provisions of any regional school district agreement,” the Legislature intended for the statute to supersede any formulas in regional agreements for apportioning the minimum regional contributions of its members. Only the additional spending portion of a regional budget may be apportioned by the member towns in the manner provided for in their regional agreement.[7]
Chapter 71, §16B also addresses funding for regional schools. The first sentence in the first paragraph predates the Education Reform Act of 1993, while the fourth paragraph was added in 1996, three years after education reform. The first sentence in paragraph one provides that the regional budget may be apportioned among the member towns according to formulas contained in the regional agreement. G.L.c. 71, §16B, ¶1. Although the fourth paragraph allows a regional school district to reallocate the “local required contributions,” it may do so only if the member towns unanimously agree. G.L.c. 71, §16B, ¶4. When a statute is amended, “the later enacted provisions must be read together with the earlier provisions left unchanged as if they originally had been enacted as one.” Commonwealth v. Connor C., a Juvenile, 432 Mass. 635, 640 (2000), citing 1A N.J. Singer, Suther *115 land Statutoiy Construction §§22.32-22.35 at 282-00 (5 th ed. 1992). Construing the first sentence of the first paragraph in conjunction with the fourth paragraph, the portion of the regional budget containing the “local required contributions” of the member towns may only be divided according to the terms of the regional agreement if all of the member towns agree. Other portions of the regional budget may be divided according to the regional agreement even if all of the member towns do not approve.
“Statutes addressing the same subject matter . . . are to be construed harmoniously so as to give full effect to all of their provisions and give rise to a consistent body of law.” Ciardi v. F. Hoffman-La Roche, Ltd., 436 Mass. 53, 62 (2002), citing Green v. Wyman-Gordon Co., 422 Mass. 551, 554 (1996); Marco v. Green, 415 Mass. 732, 736 (1993); Commonwealth v. Connor C., 432 Mass. 635, 640 (2000) (“Statutes concerning a common topic should ... be read as a whole to produce an internal consistency and to effectuate the presumed intention of the Legislature” (internal citations omitted)). Therefore, G.L.c. 70, §6 must be read in conjunction with G.L.c. 71, §16B. Furthermore, “(w]e interpret statutes so as to avoid rendering any part of the legislation meaningless.” Victory Distributors, Inc. v. Ayer Division of the District Court Department, 435 Mass. 136, 140 (2001), citing Volin v. Board of Pub. Accountancy, 422 Mass. 175, 179 (1996), quoting Adamowicz v. Ipswich, 395 Mass. 757, 760 (1985).
One of the purposes of the Education Reform Act of 1993 was “to assure fair and adequate minimum per student funding for public schools in the commonwealth by defining ... a standard of local funding effort applicable to every city and town in the commonwealth.” St. 1993 c. 71, §32, amending c. 70, §1. The statutes regarding regional school funding must be interpreted in conjunction with one another and in accordance with the expressed legislative intent. To improve school funding, the Legislature decided that each municipality shall be assessed a minimum required local contribution as determined by the Commissioner using a formula based on a number of factors.[8] G.L.c. 70, §6. Likewise, each municipality in a regional school district shall be assessed a minimum regional contribution for the funding of the regional school, and that amount is appropriated “notwithstanding the provisions of any regional school district agreement.” G.L.c. 70, §6. Additional amounts maybe appropriated for the funding of the regional school, and those amounts are apportioned according to the provisions of the regional agreement. G.L.c. 70, §6 and G.L.c. 71, §16B, ¶1. However, if the regional members wish to apportion the sum of the minimum regional contributions according to the provisions of the regional agreement, all members must unanimously agree to this change and notify the Commissioner. G.L.c. 71, §16B, ¶4.
In the case at bar, the new provision of the Agreement at issue, i.e., the Amendment to Section 4, appears to conform on its face with c. 70, §6 and c. 71, §16B. Each member is assessed its “minimum required local contribution (“MRLC”). See Section 4.1.2 of Amendment. The MRLC, as defined in the Amendment, appears to be synonymous with the "minimum regional contribution" of c. 70, §6, and, indeed, hereinafter, will be referred to as the minimum regional contribution. Additional spending by the region is assessed to each member according to a formula outlined in the Amendment, e.g., apportioned per the regional agreement as allowed in c. 70, §6 and c. 71, §16B, ¶1. See Section 4.1.3 of Amendment.
On close examination, however, the formula in the additional spending section of the Amendment has the potential, and clearly the desired effect, of undermining the statutory goal of permitting the Commissioner to establish minimum regional contributions. Under the Amendment, the amount assessed to each member in the additional spending section is adjusted upwards or downwards depending upon the difference between the minimum regional contribution and a contribution calculated on a per capita basis, with the consequence of ultimately avoiding the differential allocations which the minimum regional contributions were designed to create. See Section 4.1.3 of the Amendment. This result violates c. 71, §16B, ¶4.
The following example, which applies hypothetical numbers[9] to the steps of the formula, helps clarify the Amendment’s effect. Assume that all five members of the regional district have a 20% share of the students, which is their per capita basis; that the minimum regional contribution (“MRLC”) portion of the budget equals 10 million dollars; and that the additional spending portion (“RASA”) of the budget equals 5 million dollars. The additional spending amount assessed to each member on a per capita basis as outlined in Step 1 of the Amendment will be 1 million dollars. The minimum regional contribution of each member on a per capita basis as outlined in Step 2 of the Amendment will be 2 million dollars, resulting in a total assessment for each member on a per capita basis of 3 million dollars.

Town Per capita MRLC RASA Total

Rutland 20% $2,000,000 $1,000,000 $3,000,000
Holden 20% $2,000,000 $1,000,000 $3,000,000
Princeton 20% $2,000,000 $1,000,000 $3,000,000
Paxton 20% $2,000,000 $1,000,000 $3,000,000
Sterling 20% $2,000,000 $1,000,000 $3,000,000
In Step 3, the actual minimum regional contribution as determined by the Commissioner of Education (“COE”) is compared to each member’s per capita minimum regional contribution. As the Commissioner’s allocation is based on many factors, it is different for each town, and, in some cases, will result in an allocation higher than the per capita figure, while, in other cases, an allocation lower than the per capita sum will result. If the Commissioner’s *116 allocation of the minimum regional contribution exceeds the per capita minimum regional contribution of a member, the member receives a credit equal to the excess. If the Commissioner’s allocation of the minimum regional contribution is less than the per capita minimum regional contribution of a member, the member receives a debit equal to the deficiency. Using, for purposes of illustration, additional hypothetical amounts for the Commissioner’s allocation of minimum regional contributions, the following credits and debits would result:

MRLC MRLC

Town ver capita J2g.r_C.QE (Credit) /Debit
Rutland $2,000,000 $1,000,000 $1,000,000
Holden $2,000,000 $2,300,000 ($ 300,000)
Princeton $2,000,000 $2,400,000 ($ 400,000)
Paxton $2,000,000 $2,200,000 ($ 200,000)
Sterling $2,000,000 $2,100,000 ($ 100,000)
In Step 4 of the Amendment, the credits are subtracted from a member’s additional spending assessment, and debits are added to a member’s additional spending assessment. Credits reduce a member’s additional spending assessment, and debits increase it. However, credits cannot result in a refund for a member. Assuming that Rutland’s minimum regional contribution as determined by the COE is less than its per capita minimum regional contribution,[10] Rutland would, therefore, receive a debit in Step 4 requiring Rutland to pay a larger additional spending assessment. Similarly, assuming that the minimum regional contribution of the other four members is higher than their per capita minimum regional contribution,[11] the other four members would receive a credit under the formula, enabling them to pay a smaller additional spending assessment.
Conversely, if each member pays its minimum regional contribution as determined by the COE and its additional spending amount on a per capita basis, the total assessment for each member does not equal its total assessment under the Amendment or its total assessment using the per capita basis. Rather, the total assessment is reflective of the allocation intended by the Commissioner’s assessment of minimum regional contributions.

MRLC RASA

Town per COR ver Cao. Total

Rutland $1,000,000 $1,000,000 $2,000,000
Holden $2,300,000 $1,000,000 $3,300,000
Princeton $2,400,000 $1,000,000 $3,400,000
Paxton $2,200,000 $1,000,000 $3,200,000
Sterling $2,100,000 $1,000,000 $3,100,000
CONCLUSION
Because the Amendment requires- each town to pay its full minimum regional contribution, it appears on its face to conform with the funding procedures mandated by the Legislature pursuant to passage of education reform statutes in Massachusetts in the 1990s. However, its actual effect, and its admitted purpose, is to offset the minimum regional contribution in a manner that negates the statutorily mandated differential funding and reinstates funding solely on the basis of the regional agreement without unanimous agreement of the member towns. As a matter of law, this Court finds the Amendment violates the intent of both G.L.c. 70, §6 and G.L.c. 71, §16B, ¶4. For the foregoing reasons, Holden’s motion for summary judgment is DENIED, and Rutland’s cross-motion for summary judgment is ALLOWED.
ORDER
For the foregoing reasons, Holden’s Motion for Summary Judgment is hereby DENIED, and Rutland’s Motion for Summary Judgment is hereby ALLOWED.
[[Image here]]
Accordingly, when each member’s minimum regional contribution is added to its additional spending assessment, as adjusted by the credit/debit system outlined in Step 4, each member’s total assessment under the Amendment equals its total assessment using the per capita basis. Any economic advantage a town with a lower minimum regional contribution has received and was intended by the COE to receive, is nullified by this system. [See table below.)

 While not defined in G.L.c. 70, §2, “minimum regional contribution’’ is the regional equivalent of the “rmnimum required local contribution” calculated by the Commissioner of Education each fiscal year for each city or town with its own public schools. Each city or town is to appropriate the “minimum required local contribution” for the funding of its schools. To determine the “minimum required local contribution,” the Commissioner takes into account several different factors. See G.L.c. 70, §2 for a listing of these factors.

 Section 4.1.1 of the Amendment defines “Minimum Required Local Contribution” as the amount thereof as determined for that fiscal year in accordance with G.L. Chapter 70."

 Section 4.1.1 of the Amendment defines “Regional Agreement Spending Assessment” as “the amount of funds for operating costs to be requested of the member towns that is in excess of the aggregate of (A) the Minimum Required Local Contribution for all member towns and (B) the Chapter 70 aid *117 allocated to the Regional District (not including transportation expense and existing outstanding debt service).”

 Section 4.1.1. of the Amendment defines “per capita basis” as “each member town shall be assigned an enrollment percentage, to be determined by the individual town’s student enrollment as of October 1st of the immediately preceding fiscal year."

 Much of the summary judgment pleadings relate to the question of whether the Commissioner had the authority to approve or disapprove the Amendment. While the questions regarding the power of the Commissioner to disapprove an Amendment at all, or to disapprove an Amendment relating to funding as distinguished from reorganization of school districts, present interesting legal issues, they need not be resolved here.

 As discussed below, the member towns, however, may unanimously agree to reallocate the minimal contributions. G.L.c. 71, §160, ¶4.

 From the nature of this controversy and the arguments of counsel on these summary judgment motions, it appears that the factors relied upon by the Commissioner of Education tend to give higher minimum regional contribution assessments to communities with higher median incomes and higher property values, while communities with lower median incomes and lower properly values receive lower minimum regional contribution assessments.

 While presumably the numbers could be manipulated to show a less damaging effect, this hypothetical is illustrative of the Amendment’s obvious intended impact. As the Commissioner noted in his June 10, 2002 letter to the Chairman of the District: “The proponents of the proposed amendment [Holden, Paxton, Princeton and Sterlingl acknowledge that the rather complex calculation [contained in the Amendment] is intended to counteract the state’s minimum contribution calculations and, as much as possible, allow the full district budget to be assessed in accordance with the current regional agreement.”

 This court’s assumption is based on the undisputed fact that Rutland’s voters did not approve the Amendment in spring 2002, and the uncontested statements of counsel at the hearing on the motions.

 This court’s assumption is based on the undisputed facts that Holden, Princeton, Paxton, and Sterling approved the Amendment at town meeting in spring 2002, as well as the statements of counsel at the hearing on the motions.