Lemire, James R., J.
Plaintiff, Town of Sturbridge (“Sturbridge”), brought this action against the defendants, the Tantasqua Regional School District (“Tan-tasqua District”), which is comprised of five member towns including: the Town of Brimfield (“Brimfield”), the Town of Brookfield (“Brookfield”), the Town of Holland (“Holland”), and the Town of Wales (“Wales” and collectively “the Member Towns"), and David Driscoll, in his capacity as the Commissioner of the Department of Education (“the Commissioner”). Specifically, Sturbridge alleges breach of contract and breach of implied duty of good faith and fair dealing in relation to a Regional School District Agreement (“District Agreement”) adopted in 1952 by all the Member Towns, pursuant to G.L.c. 71, §14B. The District Agreement apportioned and assessed costs to operate the Tantasqua District on a per capita enrollment basis among the Member Towns. Sturbridge contends that Tantasqua District’s use of a wealth-based funding scheme established under G.L.c. 70, §6 for the fiscal year of 2005 resulted in higher costs assessed to Sturbridge and constitutes a breach of the District Agreement. Additionally Sturbridge is seeking declaratory judgment in Counts III, VI and VII. Count III seeks a judgment by the court ordering that the funding mechanism provided in the Regional Agreement govern the Member Towns’ apportionment for the annual operating budget. Count VI requests a judgment that their annual assessment for Fiscal Year 2005 constitutes an unfounded local mandate in violation of the provisions of G.L.c. 291, §27C. In Count VII Sturbridge seeks relief from compliance with G.L.c. 70, §6 because the Department of Education has failed to consistently and uniformly interpret and enforce its provisions. Presently before the court are the defendant Member Towns’ Consolidated Motion for Summary Judgment, plaintiff Sturbridge’s Cross Motion for Summary Judgment, and the Commissioner’s Cross Motion for Summary Judgment. For the foregoing reasons, Member Towns’ Consolidated Motion for Summary Judgment is ALLOWED, Sturbridge’s Cross Motion for Summary Judgment is DENIED, and the Commissioner’s Cross Motion for Summary Judgment is ALLOWED.
BACKGROUND
The following is a summary of the relevant facts.
I. The Parties and the District Agreement
The Towns of Brimfield, Brookfield, Holland, Wales, and Sturbridge are members of the Tantasqua Regional School District. On January 15, 1952, the five Member Towns adopted a Regional School District Agreement, which governed the construction and funding of public schools in the Tantasqua District. As is required under G.L.c. 71, §14B, Section 3 of the District Agreement provides a procedure for apportioning the Tantasqua District’s expenses among the five Member Towns. Under the terms of the District Agreement, the Tantasqua District apportioned costs on a per capita enrollment basis. That is, each Member Town’s operating cost was determined by the number of students from the respective Member Town that were enrolled in the Tantasqua District. Section 3, subsection b provides, in pertinent part:
Operating expenses for the first calendar year or fractional year the Regional District School is in operation, and for any calendar year thereafter shall be apportioned to the Participating Towns on the basis of their respective enrollment in the Regional District School on October 1 of the preceding year, or, in the event that enrollment in the Regional District School has not been accomplished by said date, on the pupil enrollment in grades 7 through 12 in each Participating Town as of October 1 of the preceding year. Any expenses incurred prior to the formal adoption of a budget as provided for in Section 6 of this Agreement shall be apportioned to Participating Towns on the basis of their pupils enrolled in grades 7 through 12 on October 1 next preceding.
*69 Section 3, subsection b. (Emphasis added.)
II. The Education Reform Act
In 1993, the Supreme Judicial Court (“SJC”) held that the Commonwealth failed to meet its constitutional duty to educate all children in public schools. McDuffy v. Secretary of the Executive Office of Education, 415 Mass. 545, 621 (1993). More specifically, the SJC stated that the Commonwealth has an obligation to educate all of its children, “whether they be rich or poor and without regard to the fiscal capacity of the community in which such children live.” Id. Three days after the McDuffy decision, the Massachusetts Legislature enacted the Education Reform Act (“the ERA”), codified at G.L.c. 70, which mandated major reforms to the governing structure and financing of public schools in the Commonwealth. The intent of the ERA was to assure fair and adequate minimum per student funding for public schools in the Commonwealth by defining a foundation budget and a standard of local funding applicable to every city and town in the Commonwealth. G.L.c. 70, §1. Under the ERA, the new system of school financing requires the Commissioner annually to establish a minimum required local contribution (“MRLC”) for each city and town. See G.L.c. 70, §6. The complex formula used to calculate each town’s MRLC is wealth-based, taking into account factors such as property values and income levels, thus requiring relatively wealthier towns to make greater contributions than relatively poorer ones. G.L.c. 70, §§2 and 6. Section 6 provides, in pertinent part:
In addition to amounts appropriated for long-term debt service, school lunches, adult education, student transportation, and tuition revenue, each municipality in the commonwealth shall annually appropriate for the support of public schools in the municipality and in any regional school district to which the municipality belongs an amount equal to not less than the sum of the minimum required local contribution, federal impact aid, and all state school aid and grants for education but not including equity aid, for the fiscal year. Notwithstanding the provisions of any regional school district agreement, each member municipality shall increase its contribution to the regional district each fiscal year by the amount indicated in that district’s share of the municipality’s minimum regional contribution in that fiscal year.
G.L.c. 70, §6. (Emphasis added.)
III. Actions
For the fiscal years of 1952 through 2004, the Tantasqua District utilized the per capita enrollment apportionment formula set forth in the District Agreement to assess operating costs. However, in spring 2004, the Tantasqua District switched to the wealth-based apportionment formula in accordance with G.L.c. 70 to prepare its budget for Fiscal Year 2005 upon the recommendation of the Commissioner. In a letter, the Commissioner urged the Tantasqua District to follow the wealth-based formula set forth in G.L.c. 70, §6 because that formula “takes precedence over the formula in the regional agreement for apportioning the minimum regional contribution of the district’s members.” Additionally, the Commissioner noted that under state law, G.L.c. 71, §16B, members of the Tantasqua District could override G.L.c. 70, §6 and apportion costs according to the terms of the District Agreement upon unanimous agreement by all members. G.L.c. 71, §16B reads, in relevant part:
The members of a regional school district, including a vocational regional school district, may elect to reallocate the sum of their required local contributions to the district in accordance with the regional agreement; provided, however, that the total sum of their required contributions shall notbe decreased. Election shall be by approval of all members of the district.
G.L.c. 71, §16B. (Emphasis added.)
Shortly thereafter, an 18-member Tantasqua Regional School Committee (“the Committee”) comprised of representatives from each of the five Member Towns approved the use of the wealth-based apportionment formula, including representatives for Sturbridge. Only one member of the Committee, a Wales representative, voted against the new formula. The Member Towns then voted assessments at their own Town Meetings based on the wealth-based formula and adopted a budget of $15,209,971 for Fiscal Year 2005. Based on this budget, the Tantasqua District assessed Sturbridge $3,685,137 for its share of operating costs. Sturbridge contends that- this new figure exceeds the total amount ($3,050,204) it would have paid under the District Agreement’s per-capita formula by $634,933. On December 9, 2004, Sturbridge filed this present action against the other Member Towns, the Tantasqua District, and the Commissioner.
DISCUSSION
I. Summary Judgment Standard
Summary judgment shall be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, *70 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts, which would establish the existence of a genuine issue of material fact in order to defeat a motion for summary judgment. Pederson v. Time, Inc., 404 Mass. at 17. The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summaryjudgment. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). All the evidence must be viewed in the light most favorable to the non-moving party. Williams v. Hartman, 413 Mass. 398, 401 (1992).
Here, there are cross motions filed by the Town of Sturbridge and the Commissioner, thus the burden may well shift back and forth between the parties. Also, for that reason, the court will address the motions separately, starting with the defendant Member Towns’ Motion for Summary Judgment which was filed first.
A. Counts I and II: Breach of Contract and Implied Duty of Good Faith and Fair Dealing
Defendants Member Towns and Commissioner argue that there was no breach of contract or breach of implied duty of good faith and fair dealing because G.L.c. 70, §6 overrides the District Agreement and mandates that all municipalities, including the Member Towns follow the statutory wealth-based formula for apportioning costs rather than the District Agreement. In its Opposition to Defendants’ Consolidated Motion for Summary Judgment, Sturbridge contends that the District Agreement is valid as a matter of law and must be followed, notwithstanding the ERA.[2]
Thus, the court must address whether G.L.c. 70, §6 overrides the 1952 District Agreement. Although no appellate court in Massachusetts has addressed this issue, at least two trial courts have held that the statutory funding scheme established under §6 supersedes a district agreement with a conflicting funding scheme. For instance, in Northeast Metropolitan Regional Vocational School District v. Department of Education, the Suffolk Superior Court upheld the provisions of G.L.c. 70, §6 over a regional district school funding agreement employing a per capita funding method. 1994 Mass.Super. LEXIS 389 (Sept. 9, 1994) (Doerfer, J.) [2 Mass. L. Rptr. 632). The court determined that the wealth-based funding scheme established by the ERA was clearly intended to trump other formulas established by regional district school agreements. Id. Further, the motion judge explained that a district may choose to spend additional amounts according to the regional agreement pursuant to G.L.c. 71, §16B, but that G.L.c. 70, §6 establishes a baseline for public school funding. Id. Further, in Town of Holden v. Wachusett Regional School District Committee, the Worcester Superior Court held that the statutory provisions of G.L.c. 70, §6 superseded an amendment to a regional school district agreement which sought to implement a per capita method of apportioning school costs. 2003 Mass.Super. LEXIS 114 (Feb. 3, 2003) (Fishman, J.) [16 Mass. L. Rptr. 112).
After reviewing the authorities cited by the parties on this issue, this court concludes that Holden and Northeast Metropolitan were decided correctly, and that the appellate courts in Massachusetts would find that §6 preempts the District Agreement under these factually similar circumstances. Contrary to Sturbridge’s assertion, §6 would also preempt agreements or amendments with conflicting funding schemes made prior to the ERA’S enactment. To permit otherwise would enable districts with existing prior agreements to circumvent and frustrate the purpose and mandate of the ERA and thus render the statute’s requirement of a MRLC meaningless.
The court does not find G.L.c. 70, §6 to be in conflict with the provisions of c. 71, §§14B(d) and 16B. Similar to Holden the District Agreement conflicts with the funding scheme outlined under §6, because it provides for a per capita funding plan as opposed to a wealth-based funding scheme. The Worcester Superior Court, Fishman, J., specifically undertook a review of the impact of this type of conflict in the Holden decision and concluded that “(t]herefore, G.L.c. 70, §6 must be read in conjunction with G.L.c. 71, §16B.” Id. Reading the sections in conjunction with one another and in accordance with the clear legislative intent, there is no conflict. The Member Towns must follow the apportionment provisions of G.L.c. 70, §6. However, members may apportion the minimum contributions according G.L.c. 71, §14B(d) and 16B using the District Agreement if all members unanimously agree. In this instance, there was no unanimous agreement to apportion pursuant to the District Agreement.
Moreover, Sturbridge argues that Member Towns and the Tantasqua District are equitably estopped from voiding their obligations under the District Agreement and from assessing it a higher allocation of costs under §6. Sturbridge claims that between the years of 1993-2004, the Committee members’ statements and acts represented their intent to follow the District Agreement after the adoption of the ERA, including Fiscal Year 2005 and thereafter.
As a general matter, Massachusetts law does not regard estoppels with favor nor extend them beyond the transactions in which they originate. See Boston & A.R.R. v. Reardon, 226 Mass. 286, 291 (1917); Tracy v. Lincoln, 145 Mass. 357, 360 (1887); Huntress v. Hanley, 195 Mass. 236, 241 (1901). Although there are circumstances that may give rise to an estoppel,[3] estoppel does not apply against acts of private and public entities where doing so would frustrate public policy intended to protect the public interest. Weston Forest and Trail Ass’n, Inc. v. Beth Ellen Fishman, 66 Mass.App.Ct. 654, 660 (2006) (not applying estoppel *71 against private entity, where doing so would frustrate conservation restriction’s policy intended to protect the public interest); McAndrew v. School Committee of Cambridge, 20 Mass.App.Ct. 356, 358 (1985) (public interest in complying with statute governing contracts with teachers precluded breach of contract claim based on estoppel principles); LaBarge v. Chief Administrative Justice of the Trial Ct., 402 Mass. 462, 468-69 (1988) (not applying estoppel against Chief Administrative Judge of the Trial Court where doing so would defeat public interest in maintaining impartiality and integrity of offices of trial court). Thus, as matter of law this court declines to apply equitable estoppel to the instant case because to do so requires enforcing the 1952 District Agreement, in violation of the letter and spirit of the ERA. See G.L.c. 70. Even assuming arguendo that estoppel is a legitimate claim, Sturbridge still cannot prevail because its purported reliance on the statements and acts of Committee members was not reasonable. Since the inception of G.L.c. 70, Sturbridge and its committee members were or should have been aware of and complied with G.L.c. 70’s provisions including the wealth-based method of apportioning costs. See O'Blenes v. Zoning Bd. of Appeals, 397 Mass. 555, 558-59 (1986) (affirming summary judgment and refusing to apply estoppel where it was unreasonable for plaintiffs attorney to rely on statement of zoning board of appeals clerk regarding procedural deadline when attorney had obligation to determine deadline based on statutory requirements). Accordingly, estoppel does not apply in this case.
Therefore, the counts for breach of contract and breach of implied duty of good faith and fair dealing cannot stand.
B. Count III: Declaratory Judgment in Favor of the Regional Agreement
Count III of the plaintiffs complaint seeks this court to make a determination and order that the provisions of G.L.c. 71, §16B and the Regional Agreement govern the assessment and allocation of the annual operating budget among the Member Towns. As discussed previously, this Court finds that in enacting G.L.c. 70, §6 the legislature intended for that statute to preempt any formulas in regional agreements for apportioning the contribution of its members. Moreover, the Legislature provided a mechanism for regional districts that wish to retain their prior budget apportionment under the terms of a district agreement in provisions of G.L.c. 71, §16B. In order to accomplish this under the provisions of G.L.c. 71, §16B, a unanimous agreement of the members is required. The fact that this provision was not utilized by the Member Towns means that G.L.c. 70, §6 applies. For these reasons the Commissioner’s Cross Motion for Summaiy Judgment as to Count III is allowed.
C. Count VI: Unfunded Mandate Provisions of G.L.c. 29, §27C
In Count VI of its complaint, Sturbridge alleges that G.L.c. 70, §6 constitutes an unfunded mandate in contravention of G.L.c. 29, §27C, thereby excusing it from compliance with the ERA. In its Cross Motion for Summaiy Judgment, the Commissioner disputes that proposition, arguing that G.L.c. 70 is specifically exempt from the unfunded mandate law. This court agrees with the Commissioner.
G.L.c. 29, §27C provides that “a law or regulation imposing new obligations on a municipality is not effective unless the Commonwealth provides by general law and any appropriation, for assumption by the [C] ommonwealth of such cost, exclusive of local administration expenses . . .” See G.L.c: 29, §27C. However, G.L.c. 29, §27C is clearly inapplicable to this case because G.L.c. 70, §15 specifically exempts chapter 70 from the unfunded mandate law.[4] For that reason, the Commissioner is entitled to summaiy judgment as to Count VI of Sturbridge’s complaint.
C. Count VII: Non-Compliance with G.L.c. 70, §6
Lastly, in Count VII of its Complaint, Sturbridge seeks a declaratoiy judgment that it is excused from complying with the provisions of G.L.c. 70, §6 because of the Commissioner’s failure to enforce these same provisions against other towns and municipalities in the past. The Commissioner now cross moves for summaiy judgment. Although Sturbridge’s factual contention that some towns in the past have failed to comply with the ERA’S statutoiy mandates may be accurate, this court refuses to exempt Sturbridge from compliance because to do so would entirely frustrate the intent, purpose, and scheme of G.L.c. 70. See G.L.c. 70. Indeed, chapter 70 provides specific remedies for instances where school committees fail to comply with laws relating to the operation of schools. Id. Such remedies include withholding funds for the operation of schools or referring matters to the Attorney General. Id. Intentionally absent from the list is an exemption from compliance with chapter 70 because to allow otherwise would be inconsistent with the ERA’S purpose of providing adequate funding for all public schools as well as its MRLC requirement. Accordingly, the Commissioner is entitled to summaiy judgment as to Count VII.
ORDER
For the reasons set forth above, it is hereby ORDERED that defendant Member Towns’ Consolidated Motion for Summary Judgment is ALLOWED, plaintiff Town of Sturbridge’s Cross Motion for Summaiy Judgment is DENIED, and defendant Commissioner’s Cross Motion for Summaiy Judgment is ALLOWED.

Additionally, Sturbridge asserts that there is a statutory conflict between G.L.c. 70, §6 and the provisions of G.L.c. 71, § 14B(d) and 16B, and as such, the court must construe these provisions as to give reasonable effect to both.

(1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission. Moran v. Gala, 66 Mass.App.Ct. 135, 139 (2006).

G.L.c. 70, §15 provides that “Itjhis chapter shall apply to all cities, towns, and regional districts, notwithstanding section twenty-seven C of chapter twenty-nine, and without regard to any acceptance or appropriation by a city, town or regional school district or to any appropriation by the general court.”