EARL HENRY SHOLLEY *vs.* SECRETARY OF THE
COMMONWEALTH (and a companion case[1]).

Nos. 02-P-1466 & 02-P-1467.

Suffolk. June 9, 2003. - September 2, 2003.

Present: GELINAS, MASON, & KAFKER, JJ.

*Elections,* Validity of nomination papers. *Moot Question. Statute,* Construction.

This court, in its interpretation of G. L. c. 53, § 45(1), which requires that
every "nomination paper shall state in addition to the name of the
candidate, (1) his residence, with street and number thereof, if any,"
concluded that the Secretary of the Commonwealth correctly required
candidates for State office to provide the city or town in which they
resided in addition to the street and number of their homes on their nomina-
tion papers; that, with respect to one candidate from North Attleborough,
who listed his residence as "71 Bulfinch St., NA 02760," the Secretary
should have accepted the contested nomination papers; and that, with
respect to a second candidate, who listed his residence as "102 Princeton
Road," the Secretary correctly interpreted the statute to require rejection of
the deficient nomination papers. [124-126]

CIVIL ACTIONS commenced in the Superior Court Department
on June 19 and June 24, 2002.

Motions for preliminary injuction were heard by *Linda E.
Giles*, J., and *Margaret R. Hinkle*, J.

*Sheila L. York*, Assistant Attorney General, for the defendant.

KAFKER, J. These two cases involve the interpretation of G. L.
c. 53, § 45(1), which requires that every "nomination paper
shall state in addition to the name of the candidate, (1) his
residence, with street and number thereof, if any."

In the case brought by Earl Henry Sholley, Sholley sought
the Republican nomination for the Bristol-Middlesex-Norfolk
State senatorial district. The Secretary of State (Secretary)

---

[1]Richard H. Wheeler *vs.* Secretary of the Commonwealth.

rejected Sholley's nomination papers and declined to put his name on the primary ballot because on fifty-three of the fifty-four nomination papers he submitted, Sholley listed his residence as "71 Bulfinch St., NA 02760." The Secretary determined that the candidate should not have used the abbreviation "NA" for North Attleborough. Although there is no other city or town in the district with the abbreviation NA, the Secretary, noting that there are other towns and cities in the Commonwealth with names that could be so abbreviated, concluded that the abbreviation was not specific enough. The Secretary had, in a previous campaign, accepted Sholley's nomination papers when they included the abbreviation "N. Attlb." for North Attleborough and those of another candidate who listed the letters "Qcy" to designate Quincy.

In the companion case, the plaintiff, Richard H. Wheeler, sought the Republican nomination for the Massachusetts House of Representatives for the Tenth Suffolk district, encompassing Brookline and parts of Boston. The Secretary rejected eight of his nomination papers[2] and declined to put his name on the primary ballot because he listed his residence on those nomination papers as "102 Princeton Road" without including the word "Brookline." There are Princeton Roads in both Boston and Brookline, although the only Princeton Road in the Tenth Suffolk district is located in Brookline.[3]

In both cases, the plaintiffs, who have not participated in these appeals, successfully sought orders for preliminary injunctions in Superior Court requiring the Secretary to accept the nomination papers and allow their names to appear on the primary ballot. The Secretary has appealed the orders pursuant to G. L. c. 231, § 118, second par. He asserts that the issue should be decided, even though both plaintiffs, who were the only Republican nominees in their districts, lost in the general election. We agree. We conclude that Sholley satisfied the

---

[2]In a letter to Wheeler, dated May 28, 2002, the Secretary disqualified eight of Wheeler's nomination papers; the Superior Court judge determined that ten nomination papers did not contain Wheeler's town of residence. The discrepancy is immaterial, as the Secretary determined that the accepted nomination papers did not contain the required number of signatures necessary for Wheeler's name to appear on the ballot.

[3]This point was conceded at oral argument.

requirements of G. L. c. 53, § 45, when he provided his street, number, the abbreviation NA for North Attleborough, and his zip code. We also conclude that Wheeler did not satisfy the statutory requirements when the only information that he provided regarding his residence was "102 Princeton Road."

Although the controversy has been rendered moot by the election results, we address the merits, as "the question is one of public importance, is very likely to arise again in similar circumstances, and . . . appellate review could not be obtained before the question would again be moot." *Attorney General* v. *Commissioner of Ins.*, 403 Mass. 370, 380 (1988). See *Metros* v. *Secretary of the Commonwealth*, 396 Mass. 156, 159-160 (1985).

For a candidate's name to appear on a primary ballot, the candidate must submit to the Secretary nomination papers signed by a minimum number of qualified voters. General Laws c. 53, § 45, provides that:

> "Every nomination paper shall state in addition to the name of the candidate, (1) his residence, with street and number thereof, if any, (2) the office for which he is nominated, and (3) the political party whose nomination he seeks. . . . [C]irculation of nomination papers without such information is prohibited."

The Secretary, in preparing the nomination paper forms, included a blank line for a candidate's residence. The words "street and number," "city or town," and "zip code" were printed beneath the blank line. The instructions on the form, in bold print and underlined, provided:

> "*All candidate information (gray areas)*[4] *must be filled in on every nomination paper prior to circulation. Certified signatures on nomination papers without the required information cannot be counted.*"

These two cases call for an interpretation of the strictures of the statement of "residence" requirement of G. L. c. 53, § 45. It is clear that the candidate must list "his street and number"

---

[4]The residence line appears in a portion of the form that was shaded gray.

on his nomination papers, and both candidates did so. The questions we face are whether the statute also requires the city or town to be listed for nomination papers to be accepted, and if the city or town name is abbreviated, whether such an abbreviation must be unequivocally clear in and of itself.

To answer these questions we consider the context and purpose of the residence provision. In G. L. c. 53, § 45, the Legislature has required candidates to identify where they reside on their nomination papers for office. This section applies to candidates for United States Congress, State-wide offices, the State Senate and House of Representatives, and municipal offices. For many of these office seekers, particularly those seeking State-wide office and those representing districts encompassing more than one town or city, the street and number alone is not enough to identify where they reside.[5]

Also persuasive is language contained in G. L. c. 54, § 41, which governs information to be included on ballots for the use of voters. There the Legislature explicitly required the inclusion of each candidate's town or city. This provision distinguishes between State and city office seekers and defines the ballot requirements differently for each: "[t]o the name of each candidate for a [S]tate office shall be added *the name of the city or town where he resides, with the name of the street and number, if any, of his residence . . .*" (emphasis supplied). *Ibid.* It further provides: "[t]o the name of each candidate for a city office shall be added the name of the street on which he resides, with his street number, if any . . . ." *Ibid.* The statutory purpose of informing voters where the candidate resides is fulfilled by requiring town or city information from State office seekers, where this will not otherwise be apparent, but not from municipal office seekers whose town or city is a given. See, e.g., G. L. c. 43, § 44C ("Any person who is qualified to vote for a candidate for any elective municipal office and who is a candidate for nomination thereto, shall be entitled to have his name as such candidate printed on the official ballot . . .").

---

[5]The Senate and House districts in the instant cases contained more than one city or town. Also, according to the State Constitution, a State Senator need only be an inhabitant of the district "at the time of . . . [the] election." Art. 101, § 2, of the Amendments to the Massachusetts Constitution.

Although we discern no difference in the purpose of the statement of residence provisions in G. L. c. 53, § 45, and G. L. c. 54, § 41, the former is drafted with a broader brush. It applies to both State and city office seekers without expressly drawing any distinctions or creating separate requirements. We conclude that the Secretary correctly requires a candidate for State office to provide the city or town in which he resides in addition to the street and number of his home or apartment on his nomination papers. The purpose of G. L. c. 53, § 45, to enable those considering nominating a candidate to locate the candidate's residence, could not be satisfied otherwise. The Secretary's interpretation also serves to harmonize the residence requirements for nomination papers and ballots for State office seekers under chapters 53 and 54. *Dowling* v. *Registrar of Motor Vehicles*, 425 Mass. 523, 525 (1997) ("Where two statutory provisions relate to the same subject matter, . . . whenever it is reasonably possible 'they should be construed together so as to constitute an harmonious whole consistent with the legislative purpose' " [citation omitted]). *Commonwealth* v. *Connor C.*, 432 Mass. 635, 640 (2000) ("Statutes concerning a common topic should . . . be read as a whole to produce an internal consistency and to effectuate the presumed intention of the Legislature"). Moreover, although there is ambiguity regarding the necessity of town or city information in G. L. c. 53 that is absent from the more explicit G. L. c. 54, we accord some deference to the Secretary's resolution of such ambiguity. See, e.g., *Massachusetts Teachers Assn.* v. *Secretary of the Commonwealth*, 384 Mass. 209, 230 (1981); *Dowling, supra* at 525.

The Secretary correctly rejected Wheeler's nomination papers because of his failure to include any information regarding his town or city of residence. The information he included on the nomination papers, his street and number, was on its face insufficient to identify his town or city of residence, as the district he sought to represent included both Brookline and parts of Boston. He also ignored the clear requirements on the nomination paper to list his city, town and zip code, which would have avoided the confusion.

In contrast, Sholley provided information regarding his town or city of residence as well as his zip code, and when all of the

information on the nomination papers was considered together, there was no danger of confusion about where he resided. North Attleborough was the only town that could be identified by the initials NA in the Senate district in which Sholley ran. The candidate's inclusion of his street address and zip code further clarified the location. The instructions printed on the Secretary's nomination forms also did not prohibit the use of abbreviations. Although the candidate would have been well advised to include the full name of the town, the abbreviation here, along with the other information on the papers, was sufficient to identify his town of residence. Finally, there is no suggestion that Sholley's abbreviation constitutes fraud or an attempt to mislead voters signing the papers. *Swift* v. *Registrars of Voters of Quincy,* 281 Mass. 271, 277 (1932) ("the presumption is that [the election laws] are enacted to prevent fraud and to secure freedom of choice, and not by technical obstructions to make the right of voting insecure"). *Colten* v. *Haverhill,* 409 Mass. 55, 61-62 (1991).

As a result, in the case of Sholley, all of the information requested and required by G. L. c. 53, § 45, was provided. The purpose of the statement of residence requirement was fully satisfied, and the Secretary's objections were "exceedingly technical." *Garrison* v. *Merced,* 33 Mass. App. Ct. 116, 117 (1992). Voters should not be denied freedom of choice for such reasons. *Ibid.*

In sum, we conclude that G. L. c. 53, § 45, does require candidates for State office to provide information regarding their city or town of residence. Sholley provided sufficient information despite the abbreviation, and the Secretary should have accepted the contested nomination papers in his case. Thus, the order for preliminary injunction entered in the case brought by Sholley is affirmed. Wheeler did not provide any such information and the Secretary correctly interpreted the statute to require rejection of the deficient nomination papers. Thus, the order for preliminary injunction in the case brought by Wheeler is reversed.

*So ordered.*