# United States Court of Appeals
## For the First Circuit

No. 05-1159

WILLIAM FURR,

Petitioner, Appellant,

v.

BERNARD BRADY,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Torruella, Circuit Judge,

Cyr, Senior Circuit Judge,

and Howard, Circuit Judge.

Dennis Shedd, for appellant.
Daniel M. Lieber, Assistant Attorney General, with whom Thomas
F. Reilly, Attorney General, was on brief for appellee.

March 3, 2006

**CYR, Senior Circuit Judge.**  Willie Furr appeals from the district court order which denied his petition for habeas corpus relief, 28 U.S.C. § 2254, which sought to set aside his state court conviction for possessing a firearm, receiving a firearm with an altered serial number, being an armed career criminal, and attempting to obstruct justice and to intimidate a witness.  We affirm.

## I

## BACKGROUND

Furr was arrested on November 3, 1999, outside Dorchester High School.[1]  Upon their arrival at the scene, the police observed Furr run toward them holding his right side, then toss what appeared to be a gun, and yell to his nearby friend, Rahshjeem Benson:  "Yo, Six, grab the gun."  Furr told the police that he had been shot by an unknown person, who had already fled the scene; that is, by someone other than Benson.  The police located and arrested Benson, who was found hiding between two nearby cars, and who pointed out to the police the firearm laying at his feet.  The gun appeared to the police to be the one Furr had tossed away moments before.

In due course, Furr was arrested and charged in state

---

[1]The material facts found by the state courts, see Commonwealth v. Furr, 788 N.E.2d 592, 596 (Mass. App. Ct.), review denied, 793 N.E.2d 375 (Mass. 2003), as recited here, are entitled to a presumption of correctness on habeas review.  See 28 U.S.C. § 2254(e)(1).

juvenile court with possessing a firearm, Mass. Gen. Laws Ann. ch. 269, § 10(a), receiving a firearm bearing an altered serial number, id. § 11C, being an armed career criminal, id. § 10G(a),[2] and attempting to obstruct justice and intimidate a witness, Mass. Gen. Laws Ann. ch. 274, § 6; Mass. Gen. Laws Ann. ch. 268, § 13B. Benson provided a written statement to the police, stating that the firearm belonged to Furr, and that Furr had gotten rid of the gun and yelled to Benson to pick it up. While in prison pending trial, Furr sent an anonymous letter to Benson, stating that he had seen and was disappointed by Benson's written statement to the police, that Benson's statement was a lie, and that Benson should testify at trial that he and the police had concocted the untruthful statement. The Furr letter made veiled threats about harming Benson's mother and siblings. The letter was intercepted by the police before it reached Benson.

At trial, the prosecution introduced both the Benson statement to the police and Furr's threatening letter. Furr objected to the Benson statement, claiming that it was hearsay by a non-testifying witness (viz., Benson), and that its introduction would violate his rights under the Confrontation Clause. The court overruled the objection, on the ground that Benson's statement was

---

[2]The predicate "violent crimes" charged under the armed career criminal statute were Furr's juvenile adjudications for armed carjacking, kidnapping, and assault and battery with a dangerous weapon. See Mass. Gen. Laws Ann. ch. 269, § 10G(a) & (e); Mass. Gen. Laws Ann. ch. 140, § 121.

-3-

not introduced to establish the truth of its contents (viz., that the gun belonged to Furr) on the firearm possession count, but rather for a legitimate nonhearsay purpose relating to the obstruction/intimidation count (viz., to establish that petitioner knew of Benson's statement and intended to intimidate him). The jury was instructed that it should consider the Benson statement only in relation to the obstruction count, and not the firearm-possession count. The jury found petitioner guilty on all counts.

The trial court decided the "armed career criminal" charge, without a jury (with petitioner's consent), and found him guilty based upon his prior juvenile adjudications. See supra note 2. After petitioner was sentenced to 8-12 years' imprisonment, he appealed to the state appellate court, which affirmed in due course, Commonwealth v. Furr, 788 N.E.2d 592, 596 (Mass. App. Ct. 2003), and the Supreme Judicial Court denied the ensuing application for further appellate review.

In November 2003, the instant habeas petition was filed in federal district court, on the grounds that (i) the admission of the Benson statement violated Furr's rights under the Confrontation Clause; and (ii) the trial court ruling that his prior juvenile adjudications qualified as "convictions" for purposes of the armed career criminal statute was unforeseeable and therefore violated his federal due process right to receive fair and adequate warning that his conduct would expose him to criminal liability under that

-4-

statute.

The magistrate judge issued a report and recommendation that the habeas petition be denied, which was adopted in toto by the district court, which subsequently granted a certificate of appealability as to both the confrontation clause and due process claims, which Furr now challenges on appeal.

**II**

**DISCUSSION**

**A.     The Standard of Review**

We review the denial of the habeas corpus petition de novo.  See Phoenix v. Matesanz, 189 F.3d 20, 24 (1st Cir. 1999). Pursuant to the Antiterrorism and Effective Death Penalty Act, we may grant habeas relief only if the challenged state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law."  28 U.S.C. § 2254(d)(1).  The "contrary to" criterion is not satisfied unless the state court "arrive[d] at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 413 (2000); see Horton v. Allen, 370 F.3d 75, 80 (1st Cir. 2004), cert. denied, 125 S. Ct. 971 (2005).  The "unreasonable application" criterion is satisfied where the state court "identifie[d] the

-5-

correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. As this is indeed a high hurdle, habeas relief will not lie, even though the state-court interpretation or application of federal law was erroneous, unless it is also shown to be objectively unreasonable. See Horton, 370 F.3d at 80.

## B.    The Confrontation Clause Claim

Furr initially contends that the admission of the Benson statement, absent any opportunity to cross-examine Benson, violated Furr's rights under the Confrontation Clause. He relies upon Bruton v. United States, 391 U.S. 123 (1968), and Tennessee v. Street, 471 U.S. 409 (1985). The Bruton Court held that the government could not introduce a non-testifying codefendant's out-of-court statement at a joint trial which also inculpated defendant, even if the trial court instructed the jury that it should consider the codefendant's extrajudicial statement only as evidence of the codefendant's guilt, not the defendant's. Bruton, 391 U.S. at 135-36. The Court observed that, although juries normally are presumed to follow instructions, the Bruton situation created too great a risk that the jury either would not or could not segregate its reliance upon the inculpatory evidence only in relation to the codefendant, and consequently that avoidance of any such jury confusion was "vital" to the defendant. Id.

-6-

In <u>Street</u>, however, the State introduced a codefendant's written statement to rebut the defendant's contention that law enforcement officials had coerced his confession. Street contended that, prior to his confession, the sheriff had read the codefendant's statement to him, then forced Street to parrot the details of that statement in Street's own confession. <u>Street</u>, 471 U.S. at 411. In order to rebut the defense theory that the Street confession was coerced in this way, the State introduced the codefendant's written statement to demonstrate how it differed in significant details from the Street confession. <u>Id.</u> at 411-12. The trial court instructed the jury that the codefendant's statement could not be considered for the truth of the matters asserted (<u>viz.</u>, Street's participation in the burglary and murder), but only to rebut the defense claim that Street had been coerced into parroting the codefendant's statement. <u>Id.</u> at 412.

In upholding the admission in evidence of the written statement given by Street's codefendant, the Court distinguished <u>Bruton</u> on the ground that the codefendant's statement there was hearsay, in that it was introduced to prove the truth of the matters asserted (<u>viz.</u>, codefendant's guilt), whereas the State's use of the codefendant statement against Street was not hearsay, in that it was introduced solely to enable the jury to compare the two confessions and to assess Street's contention that the sheriff had coerced him into parroting his codefendant's statement, rather than

-7-

to prove that Street had participated in the burglary and murder. Id. at 413-14. "The nonhearsay aspect of [the codefendant's] confession – not to establish what happened at the murder scene but what happened when [Street] confessed – raised no Confrontation Clause concerns." Id. at 414.

The Court then observed that Street's case was similar to Bruton in one respect only: the jury might have disregarded the limiting instruction and used the codefendant statement for the improper purpose of inferring Street's participation in the burglary and murder. Id. In rejecting this prospect, the Court first re-emphasized the "crucial" presumption that juries normally follow their instructions. Id. at 415. The Street confession also was crucial to the government's ability to establish his participation in the burglary and murder, and the Street allegation that his confession had been coerced (hence was inadmissible) could only be accurately evaluated if the jury were permitted to compare it with the codefendant's statement to determine what differences (if any) the two versions contained. Id. Unlike in Bruton (viz., severance of the two codefendants' trial), the trial court had no practicable alternatives to the admission of the codefendant statement which not only would have fostered this essential truth-finding function but also eliminated the risk that the jury would disregard the limiting instruction and misuse the evidence, given that (I) a redaction of the codefendant statement to remove all

references to Street would have provided the jury an inaccurate depiction of the codefendant's statement, likely resulting in more differences between it and the Street confession, and further undercutting the Street coercion defense theory; and (ii) the Street joint trial had already been severed from his codefendant's. Id. at 415-16 & 416 n.7. Finally, the Court rejected the Street argument that it was constitutionally mandated that the State call his codefendant to testify at Street's trial, then noted that the codefendant had no personal knowledge as to the particular issue regarding which his written statement was introduced: whether the sheriff subsequently coerced Street into parroting the codefendant's confession. Id. at 416.

Citing Street, the state appeals court affirmed the admission of the Benson "nonhearsay" statement for the purpose of establishing the obstruction and intimidation count, rather than the firearm possession count. Furr, 788 N.E.2d at 596-97. The court noted further that the jury need not have decided whether the contents of the Benson statement were true or false, but merely that the Benson statement had induced Furr to threaten him. Id. at 597.

Now, on appeal from the district court order denying the habeas petition, Furr contends that the state appeals court's decision was contrary to, or involved an unreasonable application of Street, because it held that it was entirely sufficient for

Confrontation Clause purposes that the Benson statement was nonhearsay and that the trial court had given a limiting instruction, whereas the Street Court went on to weigh several additional factors: (i) how important the codefendant's statement was to the prosecution's case; (ii) whether there were practicable alternatives to admitting the codefendant's statement, e.g., severance; and (iii) whether the prosecutor's closing arguments encouraged the jury to misuse the codefendant's statement against Furr. Furr maintains that, had the state appellate court considered these mandatory additional factors, it would have concluded that the Benson statement was inadmissible, because (i) it was not critical to the State's case, since it unquestionably was inadmissible on the firearm possession count; (ii) it was practicable to require that the State sever the trial of the firearm-possession count from the obstruction/intimidation count; and (iii) the prosecutor's closing argument implicitly utilized the Benson statement for hearsay purposes by asserting that Furr's letter to Benson evidenced Furr's consciousness of guilt.

The state appellate court's interpretation and application of Street to the Furr case readily passes muster under § 2254(d)(1). Furr inappropriately extracted his proposed interpretation not from the Street majority opinion, but from its two-justice concurrence. Street, 471 U.S. at 417-18 (Brennan, J., concurring) ("The out-of-court confession is admissible for

-10-

nonhearsay purposes only because that confession was essential to the State's rebuttal of respondent Street's defense and because no alternative short of admitting the statement would have adequately served the State's interest. . . . [T]he record contains no suggestion that the State was engaged in any improper effort to place prejudicial hearsay evidence before the jury."). As the Court issued a <u>majority</u> decision endorsed by six other justices, however, and not merely a <u>plurality</u> opinion, the concurrence cannot be considered a viable Court holding. <u>See</u> <u>Alexander</u> v. <u>Sandoval</u>, 532 U.S. 275, 285 n.5 (2001); <u>cf.</u> <u>Marks</u> v. <u>United States</u>, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'") (citation omitted). Thus, the concurrence simply did not command support from a majority of Justices.

As we noted in outlining the <u>Street</u> majority opinion, the Court did not purport to prescribe a mandatory checklist of factors to be considered in every case. Rather, it noted that, absent other circumstances, it is sufficient that the codefendant statement is nonhearsay – <u>viz.</u>, not admitted for the truth of the matter asserted, and provided the court gives a limiting jury instruction to that effect. <u>Street</u>, 471 U.S. at 414 ("The <u>nonhearsay</u> aspect of [the codefendant's] confession – not to prove

what happened at the murder scene but to prove what happened when [Street] confessed – raises no Confrontation Clause concerns."); see Crawford v. Washington, 541 U.S. 36, 59 n.9 (2004) ("The [Confrontation] Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.").[3] The Court then observed that, in some cases, circumstances might exist which nonetheless could create a risk that the jury might misuse the evidence, and thus rebut the normal presumption that juries would follow limiting instructions. Turning to the facts in the Street case, the Court noted the absence of such special circumstances, observing that the government obviously needed the jury to compare the contents and details of the two confessions to rebut the Street coercion defense. Id. at 416. At no point in its discussion, however, did the majority purport to endorse the mandatory consideration of a checklist of factors, let alone the factors which the two justices in concurrence considered dispositive.

---

[3]Furthermore, we reject the subsidiary contention that the trial court did not give an adequate limiting instruction, in that it failed to tell the jury in so many words that they could not consider the "truth" of the Benson statement, but instead instructed that the statement could be considered only with respect to the obstruction/intimidation count. First, the two versions are functionally equivalent, given that possession of a firearm was not a fact necessary to establish the obstruction/intimidation count. Second, and more importantly, the court further instructed: "[Y]ou are not to consider the content of the [Benson] statement in determining whether the defendant possessed the firearm or ammunition." No more was necessary.

-12-

Furr points to no subsequent case which has interpreted Street as imposing such a mandatory checklist. We frequently have stated the Street case holding as: "In general, nonhearsay statements or statements not offered for the truth of the matter asserted do not raise Confrontation Clause concerns." United States v. Trenkler, 61 F.3d 45, 62 (1st Cir. 1995). Thus, the determination as to whether the general rule of admissibility in Street applies is assessed case by case, based upon the presence of whatever special circumstances would create an unreasonable risk that the jury disregarded their instructions.

Of course, for habeas-review purposes we need not determine whether the state appellate court's interpretation and application of Street is legally correct, but simply that it was neither "contrary to," nor an "unreasonable application" of, Street. Horton, 370 F.3d at 80. For the above-stated reasons, we must conclude that it obviously was not. The state court determined that the Benson statement was nonhearsay, because the jury did not need to decide whether the contents of the Benson statement were true or false, but merely whether the statement prompted Furr to threaten him. Furr, 788 N.E.2d at 597. The fact that the appeals court did not proceed to discuss the other factors mentioned in the Street concurrence connotes, at most, that it did not consider that the Furr case gave rise to any special circumstances that might risk jury disregard of the limiting

-13-

instruction.

Insofar as Furr suggests that the appeals court was compelled, on the present record, to find (and hence discuss) any such special circumstances, we must disagree. It is quite obvious that the Benson statement was crucial for the prosecution to establish the obstruction/intimidation count, because it was necessary to prove that Benson made a statement, of which Furr had acquired knowledge, and on account of which Furr threatened and intimidated Benson. See Commonwealth v. Perez, 715 N.E.2d 76, 79 (Mass. App. Ct.) ("The witness intimidation statute [Mass. Gen. Laws Ann. ch. 268, § 13B] applied if the defendants knew of the criminal proceeding and believed that [the victim] was a potential witness."), review denied, 722 N.E.2d 976 (Mass. 1999).

Further, the Street Court simply observed as an aside, in a footnote, that the trial court could not sever the defendant's and the codefendant's trials as an alternative to admitting in evidence the codefendant statement because their trials already had been severed. Street, 471 U.S. at 416 n.7. This observation – in the nature of a negative pregnant – reasonably cannot be construed either as holding that the Court would have reached a different decision had the trials not been severed, or that trial courts must invariably consider severance as an alternative to admitting nonhearsay evidence for limited purposes.

The challenged closing argument by the prosecution

-14-

referred to the Furr letter to Benson, and suggested that its contents demonstrated that Furr had a guilty conscience. The prosecutor did not argue that the jury should draw such an inference from the Benson statement. See Commonwealth v. Perez, 825 N.E.2d 1040, 1045 (Mass. 2005) ("'It is well established that evidence regarding threats or intimidation of key witnesses for the prosecution is admissible to demonstrate consciousness of guilt.'") (citation omitted). Thus, the prosecution did not seek to lure the jury astray from the limiting instruction.

Finally, Furr cites Thomas v. Hubbard, 273 F.3d 1164 (9th Cir. 2002), overruled on other grounds, Payton v. Woodford, 299 F.3d 815, 829 n.11 (9th Cir. 2002), and United States v. Walker, 148 F.3d 518 (5th Cir. 1998), as illustrative decisions supporting the view that the Massachusetts appeals court decision in the present case is "contrary to" or an "unreasonable application" of Street. Instead, Thomas and Walker stand for the unremarkable proposition that, in certain circumstances, "out-of-court [nonhearsay] statements [may be] so prejudicial that a jury would be unable to disregard their substantive content regardless of the purpose for which they are introduced and regardless of any curative instruction." Thomas, 273 F.3d at 1173 (finding such special circumstances where statements were "emotionally charged," and that "the [other] evidence against the defendant was far from overwhelming and the case came down to a credibility battle between

-15-

the defendant and an accusing witness."). As we already noted, the inquiry into possible misuse of evidence by a jury was treated quite flexibly in Street, see 471 U.S. at 414, and it was reasonable for the state appeals court to determine that there are no such extenuating circumstances in this case.

Moreover, the Benson statement can hardly be considered unduly inflammatory. Its essential contents could readily be inferred from Furr's threatening letter, the admissibility of which Furr has not challenged. Furthermore, unlike the State in Thomas, the prosecution in the Furr case possessed other competent evidence from which the jury rationally could infer that he possessed the firearm, particularly the police officers' own observations, upon arriving at the scene of the shooting, that Furr tossed the firearm away.

For all the above reasons, we conclude that the appeals court decision is neither contrary to nor an unreasonable application of the Street decision, and we therefore affirm the district court ruling denying the habeas claim based upon the Confrontation Clause.

## C. **The Due Process Claim**

Furr was sentenced pursuant to the Massachusetts armed career criminal statute, which provides: "Whoever, having been previously convicted of a violent crime or of a serious drug offense, both as defined herein, violates the provisions of

-16-

paragraph (a) . . . of section 10 [<u>viz</u>., illegal possession of a firearm] shall be punished by imprisonment in the state prison for not less than three years nor more than 15 years." Mass. Gen. Laws Ann. ch. 269, § 10G(a) (emphasis added). "For the purposes of this section, 'violent crime' shall have the meaning set forth in section 121 of chapter 140." <u>Id</u>. § 10G(e). "'Violent crime' shall mean any crime punishable by imprisonment for a term exceeding one year, or <u>any</u> <u>act</u> <u>of</u> <u>juvenile</u> <u>delinquency</u> <u>involving</u> <u>the</u> <u>use</u> <u>or</u> <u>possession</u> <u>of</u> <u>a</u> <u>deadly</u> <u>weapon</u> that would be punishable by imprisonment for such term if committed by an adult, that: (i) has as an element the use, attempted use or threatened use of physical force or a deadly weapon against the person of another; (ii) is burglary, extortion, arson or kidnapping; (iii) involves the use of explosives; or (iv) otherwise involves conduct that presents a serious risk of physical injury to another." Mass. Gen. Laws Ann. ch. 140, § 121 (emphasis added). It is undisputed that Furr had prior juvenile adjudications for armed carjacking, kidnapping, and assault and battery with a dangerous weapon which satisfy the § 121 definition of "violent crime." See <u>supra</u> note 2.

Furr contended in the state appeals court that subsection 10G(a) is "unduly vague" because it failed to place him on fair and adequate notice that his prior juvenile adjudications counted as prior "convictions," thereby contravening his federal due process rights. See <u>Bouie</u> v. <u>City of Columbia</u>, 378 U.S. 347, 354-55

(1964). More particularly, Furr argues that (i) § 10G expressly applies to persons "having been previously convicted of a violent crime," and does not say "or adjudicated"; (ii) Massachusetts law long has presumed that, absent a clear legislative expression to the contrary, the statutory term "conviction" does not encompass juvenile adjudications, see Commonwealth v. Connor C., 738 N.E.2d 731, 738 (Mass. 2000); (iii) unlike § 10G(a), other sections of the same statutory enactment use both the words "convictions" and adjudications," which suggests that the Legislature intended a distinction; (iv) § 10G(a)'s and (e)'s cross-reference to the definition of "violent crime," in Mass. Gen. Laws Ann. ch. 140, § 121, is inconclusive, because that same cross-reference appears in many other statutes besides § 10G, see id. ch. 140, § 129B(1)(I), and thus could be read as merely imposing restrictions upon the types of adult convictions which could be considered under § 10G(a); and (v) the juvenile statutes interpreted in Connor C. – viz., Mass. Gen. Laws Ann. ch. 119, §§ 52, 54, 58 – are distinguishable from § 10G since they expressly cross-referenced to a repeat offender statute which used only the word "conviction," and not "adjudication."

The state appeals court rejected Furr's construction of § 10G(a), which presented an issue of first impression. The court found that subsection 10G(e)'s cross-reference to the "violent crime" definition "communicate[s] unmistakably a legislative intent

-18-

that an adjudication of a juvenile as a youthful offender, a form of aggravated juvenile delinquency, be taken as a 'conviction' for purposes of [§] 10G." Furr, 788 N.E.2d at 594-95 (observing that otherwise the cross-reference was purposeless). The appeals court analogized this cross-reference to the one in Connor C.: "'If a prior "adjudication" does not satisfy the "conviction" requirement . . . then the Commonwealth could never indict a child for a second or subsequent firearms offense . . . because a child is never "convicted" of violating a statute.'" Id. at 595 (citation omitted). Finally, the appeals court rejected the Bouie due-process argument advanced by Furr:

> [Defendant] also argues that [§] 10G is vague.
> . . . Prescinding from the question whether
> the defendant waived these points by not
> raising them in the Juvenile Court, neither
> has potency. Our discussion, interpretation,
> and application of § 10G in this case dispose
> of the claim that it [viz., § 10G] is
> unfathomable.

Id. (emphasis added).

Unable to mount a direct challenge to the state appeals court's interpretation of the state statute, Furr is left to claim that the appeals court decision is "contrary to" or an "unreasonable application" of Bouie, viz., that the Due Process Clause requires that a state criminal statute give fair and adequate warning as to the nature of the conduct to be

-19-

criminalized.[4]  First, he contends that the court employed the wrong legal standard, by requiring him to demonstrate that the statutory interpretation of § 10G, adopted by the appeals court, was "unfathomable," rather than merely "unforeseeable." Bouie, 378 U.S. at 355.  As the context of the above-quoted passage from the appeals court decision makes clear, however, the court used the "not unfathomable" phrase – not as an exegesis of the Bouie standard – but simply to counter Furr's argument that § 10G is hopelessly vague, i.e., not amenable to any reasonable interpretation.  Accordingly, we cannot conclude that the appeals court's interpretation of § 10G is "contrary to" the due-process standard set forth in Bouie.

Finally, Furr reiterates his proposed interpretation of § 10G, see supra, and suggests that it is so conclusively reasonable as to render the appeals court's contrary construction unreasonable for purposes of habeas review.  We disagree.  The Bouie "foreseeability" standard obviously is fluid and inexact. The most that can be said in the instant case is that Furr and the appeals court set forth two plausible statutory interpretations. As Connor C. recognized, the word "conviction" is not so inherently

---

[4]Brady contends that Bouie simply does not apply at all to the prior conviction component of a recidivist statute, citing Dretke v. Haley, 541 U.S. 386, 395 (2004) (noting that the Court has exempted proof of prior convictions from some generally applicable constitutional rules, such as the requirement that these "facts" be proved beyond a reasonable doubt).  We need not reach this issue.

narrow or precise a term that it could never be used, either in legal or common parlance, to encompass juvenile adjudications. Cf. Lovely v. Cunningham, 796 F.2d 1, 5 (1st Cir. 1986) (noting that Bouie found fault with state court's adoption of broad definition to words which normally had a narrow and precise denotation). Even assuming that one might quibble somewhat with the court's suggestion that § 10G(e)'s cross-reference to the definition of "violent crime" necessarily becomes purposeless unless the Legislature meant to bring juvenile adjudications into the ambit of § 10G, it was hardly unreasonable for the appeals court to consider that the Legislature likely foresaw this as among the necessary consequences resulting from that incorporating cross-reference.[5] Ironically, in contrast to this common-sense interpretation, the Furr interpretation is convoluted, requiring an extensive contextual analysis and comparison of a variety of statutes. Thus, whatever the reasonableness of the Furr interpretation, there is no question that it lacks the ready foreseeability of the state appeals court's construction. Accordingly, in light of the deferential standard of habeas review, we conclude that the appeals court's application of § 10G to the facts in the Furr case was neither "contrary to" nor an "unreasonable application" of Bouie.

---

[5]The Furr efforts to circumscribe the holding in Connor C. are unpersuasive, since he relies primarily upon the dissent in that case, rather than the majority opinion.

**Affirmed**.